## Case No. 5,609.

### GORDON et al. v. HOBART et al.

[2 Sumn. 401.][1]

Circuit Court, D. Maine. Oct. Term, 1836.

MORTGAGE—TENDER—ACTS OF MAINE OF FEBRUARY 5 AND 20, 1821 — EQUITY JURISDICTION OF FEDERAL COURTS—ACKNOWLEDGMENT OF DEEDS — MAGISTRATES — STATE LAWS IN FEDERAL COURTS—ESTOPPEL—RIGHT TO REDEEM — EQUITABLE BAR.

1. The act of Maine of 5th February, 1821, c. 39, § 1 [1 Smith's Laws, p. 159], requiring a tender, in certain cases, to be made of money due upon a mortgage, respects suits in the state court only, and does not apply to the general equity jurisprudence of the courts of the United States. Quaere, as to the cases, to which this statute is applicable.

[Cited in Foster v. Ames, Case No. 4,965.]

2. The equity jurisdiction of the courts of the United States is independent of the local law of any state, and is the same in nature and extent, as the equity jurisdiction of England, from which it is derived. Therefore, it is no objection to this jurisdiction, that there is a remedy under the local law.

[Cited in Pierpont v. Fowle, Case No. 11,152; Allen v. Blunt, Id. 215; Dodge v. Woolsey, 18 How. (59 U. S.) 347; Burt v. Keyes, Case No. 2,212.]

3. The act of Maine of 20th February, 1821, c. 36 [1 Smith's Laws, p. 159], declares that all deeds shall be good, as against third persons, only when "acknowledged by the grantor before a justice of the peace, in this state (Maine,) or before a justice of the peace or magistrate in some other state, &c." Held, that an alderman of the city of Philadelphia, is a magistrate within the sense of the statute, and that an acknowledgment before him will be sufficient.

4. Quaere, if this statute will protect mere strangers, who claim no title under the grantor, such as a disseizor, or no title in conflict with that held by the grantee, such as a mortgagee against a grantee, claiming the estate or equity of redemption by an unacknowledged or unregistered deed.

5. A magistrate is a person entrusted with power, as a public civil officer.

6. The courts of the United States are bound to take judicial cognizance of the laws of the different states.

7. Quaere, if the purchasers of an equity of redemption can take the objection, that the mortgage was upon a usurious consideration, or, as plaintiffs, can have any relief in equity, without offering to pay the amount due.

[Cited in Stephens v. Muir, 8 Ind. 354.]

8. A judgment of foreclosure was recovered by the executrix of the mortgagee, in 1826, in a suit against the original mortgagor. Long before this judgment, viz., in 1819, the mortgagor had assigned all his title to redeem the premises to two other persons, under whom the plaintiffs derived their title. Held, that this judgment can operate as a bar or estoppel only between the particular parties to it and their privies, and is res inter alios acta and inoperative, as regards the plaintiffs, and that the possession under it is not subversive of their right to redeem.

---

1 [Reported by Charles Sumner, Esq.]

9. The act of Maine of 5th February, 1821, c. 39, provides that the right of redemption of the mortgagor, and all claiming under him, may be foreclosed by the mortgagee's taking peaceable and open possession of the premises mortgaged for the condition broken in the presence of two witnesses. *Held*, that the possession under the writ of possession, in the presence of the sheriff delivering, and the agent receiving it, was not a possession in the presence of two witnesses, in the sense of the statute, by which the plaintiff's rights are foreclosed.

10. A mortgagee will not be permitted in a court of equity to set up an adverse possession to bar the right to redeem of his mortgagor, or of purchasers under him, unless the possession has been for twenty years, which constitutes equitable bar from lapse of time.

This was a bill in equity, brought [by Charles Gordon and others against Leavitt Hobart and Polly Hobart] to redeem certain parcels of land, which were separately mortgaged by three different and independent mortgages, by John Gordon (under whom the plaintiffs claimed by intermediate assignments), to John Hobart, since deceased, under whom the defendants claimed title. The plaintiff in the original bill (Jesse Gordon), having died during its pendency, a bill of revivor was brought by his heirs, the present plaintiffs; and the cause came on for argument upon the bill, answers, and evidence in the cause, since the revivor.

C. S. Daveis, for plaintiffs.
S. Longfellow, for defendants.

STORY, Circuit Justice. The principal question in the case is, whether the plaintiffs have a right to redeem either or both of the mortgages, or the same have been foreclosed, so as to cut off the right of redemption. But some other points have been incidentally stated, and relied on by the defendants, to which it is proper briefly to refer. One objection is, that the plaintiffs are not entitled to maintain their bill, because no tender has been made of the money due upon the mortgages, as is required by the act of Maine of the 5th of February, 1821 (chapter 39, § 1). To this, the true answer is, that the regulation respects suits in the state court only under that particular statute; and is wholly inapplicable to the general equity jurisdiction of the courts of the United States, which can, in no manner, be limited or controlled by state legislation. Whether the state statute can be applied, except to cases where a particular and certain debt or duty is admitted to be due and unperformed, we need not inquire, though it seems difficult to conceive, how it can be applied to cases, where the debt or duty is wholly uncertain and indeterminate, and cannot be ascertained, but by the judgment of the court, acting upon all the circumstances of the particular case.

Another objection is, that the deed of Thackara to Jesse Gordon (under which the plaintiffs claim) was acknowledged before an alderman of the city of Philadelphia; and that such an acknowledgment, though the deed has been recorded, is not good under the statute of Maine, of the 20th of February 1821, (chapter 36), to pass the property. That statute declares, that "all deeds and other conveyances of lands, &c. signed and sealed by the party granting the same, having good and lawful right and title thereto, and acknowledged by such grantor or grantors before a justice of the peace in this state, or before a justice of the peace or magistrate in some other of the United States of America, &c. and recorded, &c. shall be valid to pass the same without any other act or ceremony whatsoever. And no bargain, sale, mortgage, or other conveyance, &c. of any lands, &c. shall be good and effectual to hold such lands, &c. against any other person or persons, but the grantor or grantors and their heirs only, unless the deed or deeds thereof be acknowledged and recorded in manner aforesaid." So that the deed, if the acknowledgment has not been regularly made, is not utterly void, but is good to convey the land against the grantor and his heirs. The obvious policy of this enactment is to protect subsequent purchasers and claimants under the grantor, having no notice of the prior conveyance. Whether it extends to protect mere strangers, who claim no title at all under the grantor, such as a disseisor, or no title in conflict with that held by the grantee, such as a mere mortgagee against a grantee, claiming the estate or equity of redemption by an unacknowledged or unregistered deed, may perhaps be a matter of some difficulty, at least in a court of equity. But I pass by this point, for the purpose of considering, whether the acknowledgment in the present case is in conformity to the statute or not. And this resolves itself into the mere question, whether an alderman of the city of Philadelphia is a magistrate in the sense of the statute. In my judgment, he is; for I know of no other definition of the term "magistrate" than that he is a person clothed with power as a public civil officer. Mr. Justice Blackstone, in his Commentaries, says, that "the most universal public relation, by which men are connected together, is that of government, namely as governors or governed, or in other words, as magistrates and people." 1 Bl. Comm. 146. And, after speaking of the king as the supreme magistrate, he proceeds to speak of subordinate magistrates, and he enumerates several classes of persons, to whom the appellation is applicable, whose rights and duties he shall not investigate; and then adds; "Nor shall I enter into any minute disquisitions with regard to the rights and dignities of mayors, and aldermen, or other magistrates of particular corporations; because they are mere private and strictly municipal rights, depending entirely upon the domestic constitution of their respective franchises." Thus, he plainly

admits aldermen to be magistrates; and he afterwards enumerates others, whose rights and duties he shall consider; and among these are sheriffs, coroners, justices of the peace, constables, surveyors of highways and overseers of the poor. 1 Bl. Comm. 338, 339. So that it is clear, that the appellation is not confined to justices of the peace, and other persons ejusdem generis, who exercise general judicial powers; but it includes others, whose main duties are strictly executive. Dr. Johnson gives a definition of the term magistrate, not materially different from that inculcated by Blackstone; saying, that a magistrate is "a man publicly invested with authority, a governor, and executor of the laws." But it is not necessary to rest the present case on so general a doctrine. By the laws of Pennsylvania, of which this court, as a court of the United States, is bound to take judicial cognizance, the aldermen of the city of Philadelphia are invested with all the powers and authorities of justices of the peace, and of justices of oyer and terminer, and gaol-delivery of and for that city. See Act March 11, 1789 [2 Smith's Laws Pa. p. 462]; Act April 4, 1796 [3 Smith's Laws Pa. p. 272]. So that an alderman of that city is in the strictest sense a magistrate.

Another objection is, that if either or both of these mortgages have been fully paid, or the condition thereof never broken, a remedy lies at law for the plaintiffs under the local law. But this objection is utterly without any foundation in this court; for the equity jurisdiction of this court is wholly independent of the local laws of any state; and is the same in its nature and extent in all the states; that is, it is the same in its nature and extent, as the equity jurisdiction of England, from which ours is derived, and is governed by the same principles. Now, no one can doubt, that this equity jurisdiction applies to all cases of mortgages, not only to redeem the premises, upon payment of what is yet due, and unpaid, but also to compel a reconveyance of the estate, if the mortgage is virtually extinguished or paid.

Let us now proceed to the objections, which go to the very merits of the bill. And, in the first place, as to the mortgage of the 25th of November, 1814, made by John Gordon to John Hobart of three lots of land, two in Westbrook and one in Cape Elizabeth, for the payment of three thousand dollars. The original bill insisted, that this mortgage was upon an usurious consideration. But it is wholly unnecessary to consider that point, or another, which might also arise, and that is, if usurious, whether the plaintiffs, as purchasers of the equity of redemption of Gordon, could avail themselves of that objection; or whether the plaintiffs could have any relief in equity, without offering to pay the amount due;—I say, it is unnecessary to consider the one point or the other; because the plaintiffs have expressly, in the supplemental proceedings, waived all right to insist upon the usury. In respect to this mortgage, two questions arise; first, whether it has been discharged by any actual payment of the whole sum due; secondly, whether, if not paid, there has been any foreclosure of the mortgage, which extinguishes the rights of the plaintiffs. The former point need not be now considered, as it is more proper to be brought before the court upon a report to be made by a master, in case the latter point is against the defendants. It is admitted, that John Hobart, the mortgagee, took possession of all the mortgaged premises in the spring of 1820, and that the possession has ever since been in him, and those who claim under him. It is also admitted, that Polly Hobart (one of the defendants), in a suit brought against John Gordon upon mortgage, by her, as executor of John Hobart, recovered the usual conditional judgment in the supreme court for Cumberland county, at the November term, 1826, for the possession of the mortgaged premises, unless the sum of $3917.50, due on the mortgage, should be paid within two months; and that the sum not being so paid in March, 1827, a writ of possession issued, upon which possession was delivered to the executrix; and that the sum of $3917.50 has never since been paid. It is clear, that this judgment, and the subsequent possession, are, by the laws of Maine, a good foreclosure of the mortgage against John Gordon. But it appears, that long before this judgment, to wit, on the 18th of September, 1819, John Gordon assigned all his title to redeem the premises to Joseph Welsh and Hezekiah Ayer, under whom the plaintiffs derive title to the same. Unless, then, this judgment can operate as an estoppel or foreclosure against all persons claiming the equity so assigned, there is no ground to make it available against the plaintiffs. Now, it seems to me very clear upon principle, that the judgment can operate as a bar or foreclosure only between the parties to that judgment, and those, who claim subsequently under them. As to all other persons, it is res inter alios acta. It would be a most extraordinary doctrine, that third persons, not parties to the suit, and not entitled to make themselves parties, should be bound by such a judgment, a judgment which would compel them to pay a very large sum of money, without any opportunity or right on their part to contest the debt, or its amount. No case has been cited, which establishes any such doctrine; and it is certainly the last, which a court of equity would be inclined to adopt of its own mere motion. The judgment, then, is inoperative against the plaintiffs; and the subsequent possession under it is a possession of the mortgagee, not subversive of their right to redeem.

But, then, it is said, that the right of redemption of the mortgagor, and of all claiming under him, may, by the local laws (Act Feb. 5, 1821, c. 39), be extinguished and foreclosed, not merely by process of law, but by the mortgagee's taking peaceable and open possession of the premises mortgaged for the condition broken in the presence of two witnesses; and that the possession, under the writ of possession, may be treated as such a possession in the presence of two witnesses, the sheriff delivering possession, and the agent of the executrix receiving it. But this would be a most strained and unnatural construction of the statute; and, indeed, wholly repugnant to its objects, as well as to its terms. The statute puts an entry by process of law in contradistinction to an entry in the presence of witnesses.

As to the other mortgages, viz. that of the 27th of November, 1815, of a certain wharf and flats in Westbrook, and that of the 24th of November, 1817, of two other lots of land in Cape Elizabeth, for the security of the payment of $1600, it is necessary to say a few words only. No foreclosure or other extinguishment of the equity of redemption of any of those parcels is attempted to be set up or maintained. They are, therefore, clearly redeemable upon the payment of any sums, which may be now due on the same. The plaintiffs contend, that nothing is due; and the defendants deny, on the other hand, any payment. These are points to be disposed of by a reference to a master to take an account of what is due on the footing of these mortgages.

It may be proper, before closing this opinion, to notice another objection to the plaintiffs' right to redeem any of the mortgaged premises; and that is, that at the time of the deed of conveyance to Jesse Gordon, in 1832, by Thackara (which is the foundation of the plaintiffs' title), the defendants held the premises under an adverse possession, and consequently that that deed was inoperative. The only answer necessary to be made to this objection is, that the possession was that of a mortgagee; and that the latter can never be permitted, in a court of equity, to set up any adverse possession to bar the title of his mortgagor, or of purchasers under him, to redeem, unless that possession has been for twenty years, and thus has constituted an equitable bar from lapse of time. There must, therefore, be an interlocutory decree, referring the matter to a master, to report, what is due upon the footing of all and each of the mortgages, making all due charges against, and all due allowances to the defendants.

[The cause was heard upon the master's report, and upon exceptions filed thereto by both parties. The report was confirmed in all but one particular, and the exceptions overruled. See Case No. 5,608.]