## Ex parte Eugenio Prado González, Petitioner.

No. 98.   Argued July 16, 1931.—Decided July 28, 1931.

*Benjamín Guerra* for petitioner.   *R. A. Gómez* for The People.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

This is a habeas corpus proceeding originally instituted in this Court. The question it involves is stated by the petitioner thus:

"The District Court of Humacao was and is without jurisdiction to render a judgment of conviction in this case ·for violation of the National Prohibition Act, since the information filed in that court and which formed the basis of the judgment whereby the petitioner has been illegally imprisoned, is presented, verified, and subscribed by the District Attorney of Humacao, who has no jurisdiction or power to file informations for violations of a federal statute."

Really, the information on which was based the prosecution terminating in the judgment in pursuance of which the petitioner is now deprived of his liberty, was filed by the district attorney and began as follows:

"In the name and by the authority of the United States of America (The President of the United States), The People of the United States of America *vs.* Eugenio Prado González. In the District Court of Humacao, on this 12th day of May, 1931."

In our opinion, the petition should be denied. The holding of this Court in *People* v. *Zayas*, 41 P.R.R. 643, was that "By the Act of Congress approved September 21, 1922 (43 Stat. 993; 48 USCA 862), the United States of America, as a sovereign entity, did not divest itself of its power to commence and conduct prosecutions for violations of the National Prohibition Act committed in the Island." In the instant case the rule has been complied with. There is nothing in the opinions rendered on December 18, 1930, and (on rehearing) January 30, 1931, in the cited case, that can be construed in the sense that the Congress had declared that the people of the United States could not make use of the district attorneys of the Territory as well as of its courts for the purpose of prosecuting and punishing violations of said act.

In 1902, the Insular Legislature enacted a Code of Criminal Procedure. Sections 12 and 13 thereof provide as follows:

"Sec. 12. A magistrate is an officer having power to issue a warrant for the arrest of a person charged with a public offense.

"Sec. 13. The following persons are magistrates:

"1. The justices of the Supreme Court.

"2. The judges of the district court.

"3. Justices of the peace.

"4. Prosecuting attorneys."

There was then in force in Puerto Rico an Organic Act, known as the Foraker Act, whose section 31 concluded thus:

" . . . *Provided, however,* That all laws enacted by the Legislative Assembly shall be reported to the Congress of the United States, which hereby reserves the power and authority, if deemed advisable, to annul the same."

This provision was re-enacted in the present Organic Act of Puerto Rico, known as the Jones Act, in section 34 thereof, as follows:

" . . . All laws enacted by the Legislature of Porto Rico shall be reported to the Congress of the United States, as provided in section twenty-three of this Act, which hereby reserves the power and authority to annul the same . . ."

In determining the scope of the above provisions, the Circuit Court of Appeals for the First Circuit said in *Fajardo Sugar Co.* v. *Holcomb,* 16 F. (2d) 92, 96: "The result is that all Porto Rican legislation now on the statute books is—in a very real sense, though indirectly—the output of our federal government"; and in *South Porto Rico Sugar Company* v. *Muñoz,* 28 F. (2d) 820, 822, it declared, in effect, that the fact that a law passed by the Legislature of Puerto Rico and reported to Congress, as required by the first and second Organic Acts of Puerto Rico (Foraker Act April 12, 1900, and Jones Act March 2, 1917; 48 USCA, par. 731 *et seq.*), was not thereafter annulled by Congress, "has some tendency to show approval by Congress."

The Act of Congress of 1922 conferring upon the Territorial courts of Puerto Rico concurrent jurisdiction with the courts of the United States in the district, in cases of violations of the National Prohibition Act and all acts amendatory thereof or supplemental thereto, reads as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That there be,

and is hereby, conferred upon the Territorial magistrates and courts of Porto Rico jurisdiction concurrent with the commissioners and courts of the United States for the said Territory of all offenses under the Act of October 28, 1919, known as the National Prohibition Act, and all acts amendatory thereof and supplemental thereto, the jurisdiction of said territorial magistrates and courts over said offenses to be the same which they now have over other criminal offenses within their jurisdiction.''

The inference from the foregoing is that if Congress conferred concurrent jurisdiction upon the Insular magistrates and courts, and, under the law, the district attorneys are magistrates like the judges, such district attorneys are empowered to act by the very terms of the said Act of Congress. The official Spanish translation of that Act, by using the term *"jueces"* as the Spanish equivalent of the word "magistrates" of the original English text, restricts the scope of the latter term.

The same result would be reached, even though it were not concluded that the National Congress used the term "magistrates" in 1922 in the same sense in which it had been used by the Insular Legislature in 1902, since it must be conceded that said term has not a well-defined meaning. Resuming the jurisprudence on this point, Corpus Juris says: "It is difficult to give to the term 'magistrate,' derived from the Latin 'magistratus,' any definite meaning. It may be used as a generic term with a general sense, or in a narrow or strict sense. In its narrow sense a magistrate is regarded, perhaps commonly so, as an inferior judicial officer, such as a justice of the peace; a judicial officer having summary jurisdiction in matters of a criminal or quasi criminal nature; an officer having power to issue a warrant for the arrest of a person charged with the commission of a crime. In its general sense the term imports a public officer, exercising a public authority; a public civil officer, possessing such power, legislative, executive, or judicial, as the government appointing him may ordain; a person clothed with power as a public

civil officer. Accordingly, in its broader sense, the term may be employed as including an alderman, a burgess of a borough, a city judge and ex officio justice of the peace, a consul, a judge of a municipal court, a justice of the peace, a notary public, a police judge, a police magistrate, a trial justice. On the other hand, in its narrower sense, it may be employed as not including a clerk of the county court, a district attorney, or a notary public." 33 C. J. 927–928. In one of the notes to the above quoted text we find the following citation: "Dr. Johnson gives a definition of the term 'magistrate,' not materially different from that inculcated by Blackstone; saying, that a magistrate is 'a man publicly invested with authority, a governor, an executor of the laws.' *Gordon* v. *Hobart,* 10 F. Cas. No. 5609, 2 Sumn. 401, 405."

We hold the announced conclusion, because if the Congress conferred concurrent jurisdiction on the courts of Puerto Rico generally, it is evident that such jurisdiction was conferred on their officers, and regardless of the meaning of the term *magistrate* and the intention of the Congress when using it, it can not be denied that district attorneys are officers of the courts of Puerto Rico, having specific legal duties to perform not only in criminal proceedings but also in civil proceedings in certain cases.

Moreover, when this matter was discussed in conference by the members of the Court the point was raised as to whether a proceeding in habeas corpus would be the proper one for a determination of the question involved herein, and the judges pronounced themselves to the effect that there were at least grave doubts that it would be; thus, on this additional ground, perhaps the petition would still have to be denied.

For all the foregoing reasons, the writ issued must be quashed and the petitioner remanded to the custody of the Warden of the Jail of Humacao until he serves his sentence or is otherwise lawfully discharged from further confinement.