Ex Parte Eugenio Prado González, peticionario.

No. 98.—*Sometido:* Julio 16, 1931. *Resuelto:* Julio 28, 1931.

*Benjamín Guerra,* abogado del peticionario; *R. A. Gómez,* abogado de *El Pueblo.*

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Éste es un caso de *habeas corpus* tramitado originalmente en esta Corte Suprema. La cuestión envuelta en el mismo se plantea por el peticionario, así:

"La Corte de Distrito de Humacao no tenía ni tiene jurisdicción para dictar sentencia en este caso por Infracción a la Ley Nacional de Prohibición toda vez que la acusación presentada ante dicha corte inferior, y que fué la base de la sentencia por la cual el peticionario está ilegalmente encarcelado, está presentada, jurada y firmada por el Fiscal del Distrito de Humacao, quien no está investido jurisdiccionalmente con poderes para entablar denuncias por infracciones a una ley federal."

En efecto la acusación que sirvió de base al proceso en que se dictó la sentencia a virtud de la cual se encuentra el peticionario privado de su libertad, fué formulada por el fiscal del distrito, comenzando así:

"EN EL NOMBRE Y POR LA AUTORIDAD DE EL PUEBLO DE ESTADOS UNIDOS DE AMÉRICA) EL PRESIDENTE DE LOS ESTADOS UNIDOS) EL PUEBLO DE LOS ESTADOS UNIDOS DE AMÉRICA contra Eugenio Prado González. En la Corte de Distrito de Humacao a 12 de mayo de mil novecientos 31."

A nuestro juicio debe declararse la solicitud sin lugar. Lo que esta Corte Suprema decidió en el caso de *El Pueblo* v. *Zayas,* 41 D.P.R. 646, fué que "Por la ley del Congreso de septiembre 21, 1922 (U. S. Statutes at Large, vol. XLII, Part 1, Chapter 366, page 993), el poder soberano y nacional, Estados Unidos de América, no se desprendió de la facultad de iniciar y perseguir a su nombre las infracciones a la Ley Nacional de Prohibición en la Isla." Y aquí se ha cumplido con la regla. Nada hay en las opiniones de diciembre 18, 1930, y enero 30, 1931, emitidas en el caso—la segunda en

reconsideración—, que pueda interpretarse en el sentido de que el Congreso resolviera que el Pueblo de los Estados Unidos no podría usar los fiscales del Territorio al igual que sus cortes para perseguir y castigar las infracciones de la indicada ley.

En 1902 la Legislatura de la Isla aprobó un Código de Enjuiciamiento Criminal. Los artículos 12 y 13 de dicho código prescriben:

"Artículo 12.—Entiéndese por magistrado un funcionario con autoridad para dictar orden de arresto contra una persona acusada de delito público.

"Artículo 13.—Son magistrados las siguientes personas:

"1. Los jueces de la Corte Suprema.

"2. Los jueces de las cortes de distrito.

"3. Los jueces de paz.

"4. Los promotores fiscales."

Regía entonces como Ley Orgánica de Puerto Rico, el Acta Foraker cuya sección 31, al final, dice:

" . . . *Disponiéndose, sin embargo,* que toda ley decretada por la Asamblea Legislativa será comunicada al Congreso de los Estados Unidos el que por la presente se reserva la facultad de anularla si lo tuviera por conveniente."

Esa disposición quedó preservada en la segunda y vigente Ley Orgánica de Puerto Rico, Acta Jones, en su sección 34, en los siguientes términos:

"Art. 34.— . . . . Todas las leyes decretadas por la Asamblea Legislativa de Puerto Rico serán comunicadas al Congreso de los Estados Unidos, según se dispone en el Artículo 23 de esta Ley, el cual se reserva por la presente la facultad y autoridad de anularlas . . . "

Interpretando el alcance de esas disposiciones, dijo la Corte de Circuito de Apelaciones del Primer Circuito, en el caso de *Fajardo Sugar Co.* v. *Holcomb,* 16 Fed. (2d) 96. "El resultado es que toda legislación puertorriqueña que se encuentra ahora en los estatutos es en realidad, aunque indirectamente, la obra del Congreso Federal"; y en el de *South Porto Rico Sugar Co.* v. *Muñoz,* 28 Fed. (2d) 820,

"La ley promulgada por la Legislatura de Puerto Rico y comunicada al Congreso según se requiere, tanto por la primera como por la segunda Carta Orgánica de Puerto Rico, (Ley Foraker, abril 12, 1900, y Ley Jones, marzo 2, 1917), y que no fué posteriormente anulada por el Congreso, tiene la tendencia a demostrar la aprobación de dicho Congreso a la misma."

Así las cosas, pasó el Congreso la Ley de 1922 confiriendo a las cortes territoriales de Puerto Rico jurisdicción concurrente con las cortes de los Estados Unidos en el distrito en casos de infracciones a la Ley Nacional de Prohibición y de cualquier ley enmendatoria o supletoria, cuya versión correcta al español, tal como ha sido preparada por el fiscal de esta Corte Suprema, dice:

"Decrétase por el Senado y la Cámara de Representantes de los Estados Unidos de América, en Congreso reunidos: Que se confiera, como por la presente se confiere a los magistrados territoriales y cortes de Puerto Rico jurisdicción concurrente con los comisionados y cortes de los Estados Unidos en aquel Distrito sobre toda infracción de la ley de octubre 28 de 1919 conocida por el nombre de Ley de Prohibición Nacional, y de cualquier ley enmendatoria y supletoria de la misma, siendo la jurisdicción de dichos magistrados territoriales y cortes sobre tales delitos la misma que tienen en la actualidad sobre otros delitos dentro de su jurisdicción."

De lo expuesto se infiere que si el Congreso confirió jurisdicción concurrente a los magistrados y a las cortes insulares y los fiscales son magistrados lo mismo que los jueces de acuerdo con la ley, los fiscales pueden intervenir de conformidad con los términos de la propia ley del Congreso. La traducción oficial española de la citada ley de 1922 al emplear la palabra *jueces* por el vocablo *magistrates* del original inglés, restringe su alcance.

A igual resultado se llegaría aunque no se concluyera que el Congreso nacional al usar el término *magistrate* en 1922 lo hizo en igual sentido que el legislador insular en 1902, ya que hay que reconocer que dicho término no tiene

un significado bien definido, pues como, resumiendo la jurisprudencia, dice Corpus Juris: "Es difícil dar al término 'magistrate,' derivado del latín 'magistratus,' cualquier significado definido. Puede usarse como un término genérico con un sentido general, y en uno estrecho con un estricto significado. En el último caso se consideran como magistrados los funcionarios judiciales de inferior categoría tales como un juez de paz; un funcionario judicial que tiene jurisdicción sumaria en asuntos de naturaleza criminal o cuasi criminal; un funcionario que tiene poder para expedir una orden de arresto de una persona a quien se imputa la comisión de un delito. En su sentido general el término comprende un funcionario público que ejerce autoridad pública, un funcionario público civil, poseyendo tales poderes legislativos, ejecutivos o judiciales como el gobierno que lo nombra le confiera, una persona revestida de poder como un funcionario público civil. En su virtud, en su amplio sentido, el término puede usarse para comprender un concejal, un juez de la ciudad y ex oficio de paz, un cónsul, un juez de una corte municipal, un juez de paz, un notario público, un juez de policía, un magistrado de policía, un juez de juicios. Y por otro lado, en su sentido 'estricto, puede ser usado como no incluyendo un secretario de una corte de condado, un fiscal de distrito, o un notario público." 33 C. J. 927–928. En una de las notas se encuentra la siguiente cita: "*Dr. Johnson* da una definición del término 'magistrate,' que no difiere materialmente de la de Blackstone, diciendo que un magistrado 'es un hombre públicamente investido con autoridad, un gobernador, un ejecutor de las leyes'." *Gordon* v. *Hobart,* 10 F. Cas. No. 5, 609, 2 Summ. 401, 405.

Sostenemos esa conclusión, porque si el Congreso confirió jurisdicción concurrente a las cortes de Puerto Rico en general, claro es que la confirió a todos sus funcionarios, y sean cuales fueren el significado del término *magistrate* y la intención del Congreso al usarlo, no puede negarse que los

fiscales son funcionarios de las cortes de Puerto Rico con deberes legales específicos que cumplir no sólo dentro del procedimiento criminal, sino dentro del civil en varios casos.

■ Además, al discutirse este asunto en el seno del tribunal se levantó la cuestión de si era el *habeas corpus* el procedimiento apropiado para resolver la cuestión planteada, pronunciándose el criterio de los jueces en el sentido de que existían por lo menos grandes dudas de que lo fuera, y así, por ese motivo adicional, quizá habría siempre que desestimar el recurso.

*Por virtud de todo lo expuesto debe anularse el auto expedido quedando el peticionario bajo la custodia del Alcaide de la Cárcel de Humacao hasta que cumpla la sentencia o sea de otro modo excarcelado legalmente.*