EL PUEBLO DE PUERTO RICO, demandante y apelante, *v.* JUAN CHAPARRO, acusado y apelado.

No. 4571.—*Sometido:* Febrero 17, 1932. *Resuelto:* Julio 22, 1932.

*Pedro Baigés Gómez*, abogado del apelante; *R. A. Gómez, Fiscal*, abogado de *El Pueblo*, apelado; *M. Cruz Horta, Fiscal Auxiliar de Prohibición y Ayudante Especial del Fiscal Federal*, como amicus curiae.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

En este caso se imputa al acusado una infracción a la Ley Nacional de Prohibición consistente en poseer para la venta como dos cuartillos de ron y medio cuartillo de anís, bebidas embriagantes que contienen más de la mitad del uno por ciento de alcohol por volumen. En la corte de distrito el acusado pidió que se ordenara el archivo de la causa basándose en una moción que copiada a la letra, en lo pertinente, dice:

"PRIMERO: Que este caso se ha iniciado ante la Corte Municipal de Mayagüez por denuncia jurada por el policía insular José Montero Cintrón y en dicha denuncia se imputa a este acusado una supuesta infracción a la Ley de Prohibición.

"SEGUNDO: Alega el acusado que el denunciante en este caso es un policía insular, y por tanto, no es un funcionario Federal de los facultados por la ley para poder iniciar el caso mediante denuncia jurada ante una corte insular o Federal, con jurisdicción para poder entender de un caso de esta naturaleza.

"Tercero: Que el delito imputado al acusado no es uno por el cual se imputa al acusado ser un estorbo público y la acción establecida una por la cual se persiga el abatir o restringir dicho estorbo público, que es el único caso en el cual de acuerdo con la sección 22, título II, de la Ley Nacional de Prohibición, cualquier fiscal de cualquier Estado o cualquier subdivisión del mismo puede iniciar el proceso.

"Cuarto: Que de acuerdo con la sección II del título II de la 'Ley Nacional de Prohibición,' solamente el Comisionado de Rentas Internas, sus auxiliares, agentes e inspectores Federales podrán jurar denuncias ante los Comisionados de los Estados Unidos u otros funcionarios o cortes autorizadas a expedir autos para el arresto de aquellas personas que resulten infractores a la ley, y ellos únicamente podrán, sujetos a la dirección del Fiscal de los Estados Unidos, llevar la acusación. Y siendo eso así y no habiéndose desprendido El Pueblo de los Estados Unidos de la facultad de iniciar el caso, dicho policía insular José Montero Cintrón, que es un funcionario insular y no un funcionario federal de los enumerados en la sección II del título I de la ya mencionada Ley, no tiene facultades para iniciar el caso, tal cual lo ha hecho en el presente.

"Véase el caso de *El Pueblo* v. *Zayas,* vol. 41, panfleto número 7, de las Decisiones de Puerto Rico, páginas 646–656."

Oídas las partes, la corte de distrito dió la razón al acusado. De la resolución fundada que dictara se transcribe lo siguiente:

"La corte entiende que de acuerdo con la jurisprudencia establecida en el caso de El Pueblo v. Zayas, reportado en el vol. 41, panfleto No. 7, de las Decisiones de Puerto Rico, página 646 y siguientes, la Nación, esto es, El Pueblo de los Estados Unidos, por la Ley de 21 de Septiembre de 1922 creó la jurisdicción concurrente en los tribunales de Puerto Rico en los casos de infracción a dicha Ley Nacional de Prohibición, pero la Nación por las disposiciones de dicha Ley no se ha desprendido de la facultad de iniciar el caso, y siendo ello así, solamente en un caso de esta naturaleza los funcionarios federales, o cualquiera de ellos enumerados en la sección II, título II, de la ya mencionada Ley Nacional de Prohibición, son los únicos con facultades para iniciar el caso, esto es, para jurar una denuncia en un caso como el presente.

"Cuando el Congreso quiso dar la facultad de iniciar el caso a un funcionario no federal, lo hizo de una manera inequívoca. Al efecto véase la sección 22, título II, de la Ley Nacional de Prohibi-

ción en la cual en las acciones para abatir cualquier estorbo público en relación con la Ley Nacional de Prohibición, dicha acción podrá iniciarse a nombre de los Estados Unidos por el Fiscal General de los Estados Unidos, o por cualquier Fiscal de los Estados Unidos, o cualquier Fiscal de cualquier Estado o cualquier subdivisión del mismo o por el Comisionado o sus agentes o auxiliares.

"En el caso de Gambino v. United States, 275 U. S. 310, de la Corte Suprema de los Estados Unidos, se dijo como sigue:

" 'ARREST AND SEIZURE BY STATE OFFICERS.—The words, "any officers of the law," as used in 26, title II, of the National Prohibition Act, imposing the duty of arrest and seizure upon "any officers of the law," do not include state police officers so as to make them agents of the United States in making an arrest for illegal transportation of liquor.'

"La corte entiende que esta resolución de la Corte Suprema de los Estados Unidos es completamente clara y terminante, resolviendo que oficiales policíacos del Estado no son Agentes del Gobierno de los Estados Unidos.

"Por los fundamentos expuestos la corte entiende que el policía insular José Montero Cintrón, denunciante en este caso, no tiene facultades para iniciar el mismo, esto es, para jurar la denuncia y por tanto la corte ordena el archivo de este caso, sin costas."

No conforme el fiscal, apeló para ante esta Corte Suprema. A nuestro juicio la resolución apelada debe revocarse.

■ ■ Mientras se ha estado sustanciando el recurso, la Corte de Circuito de Apelaciones del Primer Circuito revocó la decisión de esta Corte Suprema en el caso de *El Pueblo* v. *Zayas,* 41 D.P.R. 646, en que se basó principalmente la corte de distrito para decretar el archivo de la causa.

En su opinión la Corte de Circuito comienza por transcribir el título de la denuncia presentada en la Corte Municipal de Juana Díaz, narrando luego la historia del proceso y las sucesivas leyes sobre la materia hasta llegar a la de septiembre 21, 1922 (42 Stat. 993), que dió a las cortes insulares jurisdicción concurrente con la corte federal, y dice:

"La Corte Suprema de Puerto Rico, en la opinión emitida en este caso, admitió, y razonablemente debe admitirse, que esta ley confirió jurisdicción a las cortes insulares en los delitos cometidos en viola-

ción de la Ley Nacional de Prohibición. También es cierto que si bien la ley dice que la jurisdicción de las cortes insulares en tales delitos 'será la misma que ellas ahora tienen en otras causas criminales dentro de su jurisdicción,' no declara expresamente que el procedimiento en tales cortes en la tramitación de dichos delitos 'será el mismo' que ahora prevalece para otras causas criminales dentro de su jurisdicción, y no era necesario que así se hiciera, toda vez que el art. 10 de la Carta Orgánica de marzo 2, 1917, expresamente dispuso que 'todas las acciones criminales o penales en los tribunales locales se instruirán a nombre y por autoridad de ''El Pueblo de Puerto Rico,'' ' al igual que el art. 41 de la aludida Carta Orgánica provee cómo se harán las diligencias judiciales en la Corte Federal, según indicamos más arriba.

''El art. 10 de la Carta Orgánica de marzo 2 de 1917 provee:

'' 'Todas las diligencias judiciales se harán a nombre de ''Estados Unidos de América, ss, el Presidente de los Estados Unidos,'' y todas las acciones criminales o penales en los tribunales locales se instruirán *a nombre y por autoridad* de ''El Pueblo de Puerto Rico''. . .' (Bastardillas nuestras.)

''Los delitos cometidos bajo la Ley Nacional de Prohibición, de los cuales se confiere jurisdicción a las cortes insulares por la ley de septiembre 21 de 1922, son acciones penales en que las cortes locales tenían autoridad para conocer y si el significado claro de la fraseología del art. 10 ha de seguirse, entonces tales procedimientos se instruirán a nombre y por autoridad de 'El Pueblo de Puerto Rico.'

''. . . El mero hecho de que la Ley Nacional de Prohibición sea un estatuto federal, no es suficiente motivo, habiéndosele dado jurisdicción a las cortes insulares para conocer de los delitos por infracción a la misma, para que se resuelva que tales procedimientos deberán ser instruídos a nombre de los Estados Unidos, cuando el art. 10 expresamente dispone que 'todas las acciones criminales o penales en los tribunales locales se instruirán a nombre y por autoridad de ''El Pueblo de Puerto Rico'' '. Como el Congreso tenía facultad para conferir jurisdicción a las cortes insulares en los delitos cometidos bajo la Ley Nacional de Prohibición, de igual modo tenía poder para decir que al iniciarse tales delitos en dichas cortes, los procedimientos deberían instruirse a nombre y por autoridad de El Pueblo de Puerto Rico. No puede haber duda alguna de que el Congreso, al redactar las disposiciones arriba citadas de la ley de septiembre 21 de 1922, tenía conocimiento de las disposiciones del art. 10 de la Carta Orgánica de 1917, y que su intención fué que todas las acciones criminales o penales en las cortes locales por los delitos cometi-

dos en violación de la Ley Nacional de Prohibición, fueran instruídos en la forma indicada en el artículo 10, al igual que sabía, al redactar la sección 3 de la ley de noviembre 23 de 1921, que el art. 41 de la Carta Orgánica proveía la forma en que las acciones bajo la Ley Nacional de Prohibición, debían ser instruídas en la Corte de Distrito de los Estados Unidos para Puerto Rico. Ramos v. United States, *supra,* pág. 763.''

Para sostener su conclusión cita y analiza varios casos de la Corte Suprema de Hawaii y de la de Distrito de la Zona del Canal de Panamá, y prosigue:

''La conclusión a que aquí llegamos está sostenida en principio por el caso de Summers v. United States, 231 U. S. 92. En dicho caso se instituyó un proceso criminal contra Summers en Alaska por infracción a la Ley Nacional de Bancos que se había hecho extensiva a dicho territorio. La acusación contenía 56 narraciones (*counts*). La sección 43 del Código Penal de Alaska (30 Statutes 1253, 1291) proveía en parte 'que la acusación sólo debe imputar un delito.' En dicho caso el gobierno sostenía que toda vez que el delito imputado no estaba definido por el Código Penal de Alaska, el art. 43 del mismo no era aplicable y que la acusación era válida de conformidad con el art. 1024 de los Estatutos Revisados de los Estados Unidos que autorizaba la acumulación de narraciones (*counts*) en las acusaciones federales. La corte sentenciadora sostuvo la contención del gobierno. La Corte de Circuito de Apelaciones del Noveno Circuito confirmó la sentencia. (202 Fed. 457), pero la Corte Suprema de los Estados Unidos revocó a la Corte de Circuito de Apelaciones y resolvió que el procedimiento provisto en el art. 43 del Código Penal de Alaska era aplicable. En el curso de su opinión, la Corte Suprema de los Estados Unidos dijo:

'' 'La corte sentenciadora expresó su reconocimiento de la diferencia existente entre una corte de distrito y una de circuito de los Estados Unidos y una corte territorial como la del Distrito de Alaska, mas fué de opinión que cuando esta última corte ejercía jurisdicción para hacer efectivas las leyes de los Estados Unidos ''no solamente el derecho substantivo sí que también era de aplicación la maquinaria, el procedimiento que permitía a la corte poner en vigor el derecho substantivo.'' La Corte de Circuito de Apelaciones, en una opinión circunstancial, llegó al mismo resultado general y consideró que el Código de Alaska, por su título y por algunas de sus disposiciones, explícitamente determinó los delitos existentes en Alaska y el pro-

cedimiento aplicable a los mismos. El título de la ley es, según se dijo, ''Ley para definir y castigar los delitos en la Corte de Distrito de Alaska y para proveer·un Código de Enjuiciamiento Criminal para dicho distrito''; la cláusula inicial es ''que las leyes penales y criminales de los Estados Unidos de América y el procedimiento bajo las mismas en el distrito de Alaska, será como sigue,'' y el art. 2, Capítulo I, título 1, provee que ''los delitos y crímenes definidos en esta ley, cometidos dentro del distrito de Alaska, serán castigados en la forma que aquí se dispone.'' Por consiguiente, se llegó a la conclusión que como el delito imputado en la acusación no era uno de los mencionados en el Código de Alaska, no debía regirse por el procedimiento local, sino por el procedimiento prescrito en el art. 1024 de los Estatutos Revisados. Esta conclusión fué fortalecida por una consideración del génesis de las disposiciones respectivas. El resultado de la conclusión a que se llegó es la existencia de un procedimiento doble en la prosecución de distintos delitos cometidos dentro de la misma jurisdicción territorial. Podrían citarse ejemplos de este resultado, pero es ciertamente indeseable hacerlo, y la naturaleza sistemática del Código de Alaska indica una intención contraria.''

La decisión de la Corte de Circuito despeja el camino para llegar a la conclusión que sostiene El Pueblo apelante, aunque no resuelve concretamente la cuestión que levantara el acusado en la corte de distrito. Decimos despeja el camino porque franca y abiertamente decide que no sólo se confirió a las cortes insulares jurisdicción para conocer de las infracciones a la Ley Nacional de Prohibición conjuntamente con la Corte de Distrito de los Estados Unidos para Puerto Rico, sí que para actuar en el ejercicio de esa jurisdicción en la forma autorizada por la ley para las causas criminales corrientes.

Otro caso en el mismo rumbo y que se acerca aun más al punto concreto debatido, es el de *Ex parte Prado,* 42 D.P.R. 787, en el que esta Corte Suprema dijo:

''De lo expuesto se infiere que si el Congreso confirió jurisdicción concurrente a los magistrados y a las cortes insulares y si los fiscales son magistrados lo mismo que los jueces de acuerdo con la ley, los fiscales pueden intervenir de conformidad con los términos de la propia ley del Congreso. . .

''A igual resultado se llegaría aunque no se concluyera que el

Congreso nacional al usar el término *magistrate* en 1922 lo hizo en igual sentido que el legislador insular en 1902, . . .

' "Sostenemos esa conclusión, porque si el Congreso confirió jurisdicción concurrente a las cortes de Puerto Rico en general, claro es que la confirió a todos sus funcionarios, y sea cual fuere el significado del término *magistrate* y la intención del Congreso al usarlo, no puede negarse que los fiscales son funcionarios de las cortes de Puerto Rico con deberes legales específicos que cumplir no sólo dentro del procedimiento criminal, sino dentro del civil en varios casos."

El argumento de la existencia en la Ley Nacional de Prohibición de las secciones 2 y 22, no tiene gran fuerza. Cuando la ley se puso en vigor, sólo a las autoridades federales se encomendó su ejecución y era natural que si en algún caso como en el de la sección 22 se extendía esa jurisdicción a algún funcionario estadual, el legislador hablara expresamente. Igual curso siguió cuando confirió jurisdicción concurrente a las Cortes Insulares de Puerto Rico. Pero como no se trataba de casos especiales, sino de todos los casos, prescribió una fórmula general que ha sido interpretada, como se ha visto, en su mayor amplitud y llevando consigo todas sus naturales consecuencias.

Igual puede decirse con respecto a la cita del caso de *Rosario Gambino et al.* v. *United States,* 275 U. S. 310. Dejando a un lado la diferencia de *status* dentro de la unión que existe entre el Estado de Nueva York y el territorio organizado y no incorporado aún de Puerto Rico y limitándonos a la Ley Nacional de Prohibición, se advierte en seguida que en Nueva York los funcionarios del estado no tienen jurisdicción concurrente para intervenir como la tienen los del territorio de Puerto Rico. Además, en el caso de Gambino, *supra,* no se trataba de quién había presentado o jurado la denuncia, sino de una violación por parte de policías del Estado de Nueva York de los derechos constitucionales de los acusados garantizados por las Enmiendas 4, 5 y 6 de la Constitución con respecto a registros y ocupaciones ilegales. Para tener una idea más exacta de las cuestiones fundamentales envueltas y resueltas en el caso, parece conveniente

transcribir el siguiente párrafo de la opinión de la Corte Suprema.   Dice:

"El gobierno alega que la evidencia era admisible, porque existió causa probable, Carroll v. United Stated, 267 U. S. 132, 153, 69 L. ed. 543, 551, 39 A.L.R. 790, 45 Sup. St. Rep. 280, y también porque no se demostró que la policía del estado fuera, en el momento del arresto, registro y ocupación, agente de los Estados Unidos.   Los acusados alegan que no hubo causa probable y que los policías del estado deben ser considerados como agentes de los Estados Unidos, porque la sección 26 del título II de la Ley Nacional de Prohibición impone el deber de arrestar y de ocupar licores que estén siendo ilegalmente transportados no solamente sobre el Comisionado de Rentas Internas, sus auxiliares e inspectores, sino también sobre 'cualquier oficial de la Ley.'   Somos de opinión, de acuerdo con los hechos, los cuales es innecesario detallar, que no hubo causa probable. También somos de opinión de que la frase 'cualquier oficial de la ley' usada en la sección 26 se refiere únicamente a. oficiales federales y que los policías no eran, al momento del arresto y de la ocupación, agentes de los Estados Unidos.   Compárese el caso de Dodge v. United States, 272 U. S. 530, 531, 71 L. ed. 392, 47 Sup. Ct. Rep. 191."

Si todo ello es así, si las cortes insulares con arreglo a su jurisdicción (*El Pueblo* v. *Fuertes*, 41 D.P.R. 891) pueden conocer en la forma usual y corriente de las causas de prohibición, si los fiscales insulares intervienen como tales en las investigaciones y persecuciones instituídas por violaciones de esa ley, si se procede en ellas exactamente igual que en la investigación y castigo de cualquier otro delito, ¿cómo concluir que no tienen aplicación en cuanto a ellas la sección 2 de la Ley de 1908, Leyes de 1908, p. 136, disponiendo la organización, reglamentación y gobierno de la Policía Insular de Puerto Rico, el artículo 22 del Código de Enjuiciamiento Criminal de Puerto Rico y el artículo 1 de la Ley de 28 de mayo de 1904, fijando el procedimiento para los juicios de causas criminales en los Juzgados Municipales, Leyes de 1905, p. 18, que permiten a los policías presentar denuncias ante las cortes municipales y de paz a los efectos de iniciar los procesos en causas criminales de su jurisdicción?

A nuestro juicio la tienen, y tratándose como se trata en este caso de un delito menos grave de la jurisdicción de la corte municipal, debe resolverse que el policía que formuló la denuncia jurada origen del proceso, estaba autorizado para ello. De ahí que dijéramos desde el principio que *debía revo-carse la resolución apelada, devolviéndose la causa a la Corte de Distrito de Mayagüez, en donde se encontraba en grado de apelación, para ulteriores procedimientos de conformidad con la ley.*

El Juez Asociado Señor Córdova Dávila no intervino.