# CARDONA *v.* QUIÑONES.

## APPEAL FROM THE SUPREME COURT OF PORTO RICO.

No. 185. · Submitted January 18, 1916.—Decided February 21, 1916.

Where the appeal is prayed within the statutory time, the mere date of its allowance by the court is not controlling. *United States* v. *Vigil*, 10 Wall. 423.

Where the record in an appeal from the Supreme Court of Porto Rico contains a statement of fact prepared by the court below; and there is an entire absence of evidence, except as contained in such statement and the opinion, this court can only dispose of the legal propositions in the light of the facts as so shown and elucidated.

It is the settled doctrine of the court not to disturb but, in the absence of clear error, to uphold, the action of the court below as to matters concerning purely local law.

Both courts below having, in an action to recover real estate in Porto Rico, upheld the ten year prescription under the code, and also having found that appellant was not a third person entitled as such to the benefits of the recording provisions of the Mortgage Law, this court affirms the judgment.

20 Porto Rico, 421, affirmed.

THE facts, which involve the jurisdiction and practice of this court in appeals from judgments of the Supreme Court of Porto Rico and the validity of a judgment of that court, are stated in the opinion.

*Mr. Jose R. F. Savage* for appellant.

*Mr. Francis H. Dexter* for appellee.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

Both courts below rejected the claim of title made by the appellant to a tract of land of 40 cuerdas. As the

appeal was prayed within the statutory time, the mere date of its allowance by the court is not controlling and the motion to dismiss which proceeds upon a contrary assumption is therefore without foundation and is overruled. *United States* v. *Vigil,* 10 Wall. 423, 427.

Obviously upon the theory that our power to review was controlled by the rule obtaining as to territorial courts of the United States this record, as was the case in *Elzaburu* v. *Chavez,* 239 U. S. 283, contains a statement of facts prepared by the lower court for the purposes of this appeal. As there is an entire absence from the record of the oral and documentary evidence upon which the court below acted except so far as the same may be shown by the opinion of the court or may be contained in the statement of facts, it follows that the record does not enable us to review the facts and we proceed to dispose of the legal propositions urged for reversal in the light of the facts as stated and as elucidated in the opinion of the court. Abbreviating and somewhat changing the order in which they are stated below, we recapitulate the essential facts as follows:

Two brothers, José Salvador Suris and Ramón María Suris, having acquired by various acts of purchase seventy cuerdas of land in the ward of Sabana Eneas of San Germán, in November, 1870, executed a mortgage on 40 cuerdas of the land thus acquired, being the 40 cuerdas here in controversy, in favor of the Charity Hospital at San Germán. In 1879 the Charity Hospital commenced proceedings to foreclose this mortgage, but such proceedings were stayed until 1882 in consequence of an appeal taken to the Territorial Audiencia. After the cessation of the stay, in that year an attachment against 100 cuerdas of land belonging to the two brothers was levied and the property thus attached was placed (sequestered) in the hands of one Pablo María Stefani. On the same day,

February 9, 1882, by a contract under private signature the two Suris brothers sold to Stefani the 40 cuerdas here in controversy which had been mortgaged to the hospital, the purchaser obligating himself to pay the hospital debt and, if a surplus remained, to pay certain attorney's fees which had been incurred. The agreement also contained a conveyance to Stefani of another and distinct tract of land for another and distinct price. This agreement under private signature was never inscribed upon the public records. A few days after it was made and presumably before the contract of sale had been carried out, the Suris brothers executed before a notary an act of consolidation of the various properties which they had acquired which they described as "Perseguida" and this act was put upon the public records. Under the private agreement Stefani the purchaser went into possession and discharged the obligations of the private contract of sale.

In 1888 a commercial firm, Schulze & Company, as creditors of the Succession of Stefani, who had in the meanwhile died, brought suit against his Succession to enforce its debt, and for the purpose of getting upon the records the possessory title of Stefani to enable an attachment to be levied, instituted and carried out the necessary proceedings. When the order for record was obtained the property was levied upon and sold at a judicial sale and was bought in by Schulze & Company. After thus becoming the purchasers of the land in controversy, the firm in 1899 executed before a notary and put of record a deed consolidating into a plantation called Imisa various tracts of land containing 192.30 cuerdas, the deed reciting that one of the parcels of land included in the plantation was a tract of 40 cuerdas called "Hospital" or "Perseguida." Ramón Maria Suris, one of the original vendors, died in the meanwhile, and in 1900 his heirs put upon record a declaratory deed asserting their undivided owner-

ship as the successors of their father to a tract of 40 cuerdas known as Perseguida.

The Bank of Porto Rico as the holder of a mortgage put upon the Imisa plantation by Schulze & Company, foreclosed the same and bought in the property in August, 1905, and in November of the following year (1906) the bank sold the plantation thus acquired to Francisco P. Quiñones, the defendant, his title as purchaser having been inscribed upon the public records.

In 1907 José Salvador Suris, one of the original vendors under the act of private sale, as well as the widow and heirs of his deceased brother, Ramón María Suris, the other original vendor, each executed deeds of sale of an undivided half interest in the property called "Perseguida" to Juan Suris Cardona, a son of José, and these acts of sale were put upon the public registry. A few days later the parties vendor to the acts above stated executed another notarial act in which they declared that the property had not been in their possession, but in the possession of the defendant Quiñones and the Bank of Porto Rico and therefore they had not collected revenues, and they ceded to the purchaser the right to collect such revenues. Under the ownership alleged to result from these acts this suit was commenced by Cardona to recover the property.

The findings in express terms establish that "From 1882 the property sued for ceased to belong to the brothers José Salvador and Ramón María Suris by reason of the sale set out in the private contract, and since then it has been in the quiet, peaceful and public possession, as owners, in good faith and by title of purchase of Stefani, later of Schluze & Company, then of the Banco de Puerto Rico, and finally of Quiñones, residents of Porto Rico." As to the purchase by Cardona, the plaintiff, from his father and the representatives of his deceased uncle, the findings expressly state: "When the plaintiff purchased the property sought to be recovered he knew the

history of it as here related and knew that his father and cousins had not possessed the same since the year 1882." And the conclusion reached as to the ultimate facts on this subject is thus expressed in the opinion of the court below: "In view of the manner in which the facts have occurred, we have no doubt whatever that the deeds of sale of the property in question executed in favor of Juan Suris Cardona have had no other purpose than that he should institute this suit to avail himself of and assert his rights as a third party and thus save his father and the heirs of his uncle from the consequences of the private document executed in favor of Stefani; and we are likewise convinced that the plaintiff knew the history of the said property before he made his purchase, and that his father and his cousins had not possessed the same since 1882, as stated in the complaint."

Applying the law to the facts stated, the court concluded: (a) "Under such conditions the plaintiff cannot claim the benefits which the law grants to third parties, because nobody can be a third party who, although he had not intervened in the first contract of sale, purchased, however, knowing that his vendors were not the owners and had no possession of the property sold. The same doctrine has already been established by this court in the case of *Voight* v. *Rivas* (1 Decisiones de Puerto Rico, 60), decided May 10, 1900." (b) From the possession which, as we have seen, the court found to have existed from 1882 in Stefani and his successors, Schulze & Company, the Bank of Porto Rico and Quiñones, and the various titles which were put upon the record in the transfers as made, especially the inclusion of the property in the plantation "Imisa," it was held that between the parties there was a sufficient basis laid for a just title and possession as owner in good faith adequate to sustain a prescription of ten years which was upheld.

The contentions for reversal are numerous and are

greatly multiplied by their reiteration in somewhat changed form of statement under the very many propositions and subdivisions of propositions embraced in the elaborate printed argument, but we dispose of them as follows:

*First.* Giving effect to the settled doctrine by which we do not disturb, but on the contrary, uphold, the action of the court below as to matters concerning purely local law except upon conviction on our part of clear error committed (*Nadal* v. *May*, 233 U. S. 447, 454; *Villanueva* v. *Villanueva*, 239 U. S. 293, 299), we at once dismiss from view the various contentions concerning the form of the pleadings, the question whether a default should not have been allowed as to the issues presented by certain amendments of the pleadings, the admissibility as between the parties or their successors or assigns of the act under private signature either because of the asserted ambiguity of its terms or the inadequacy of the number of witnesses to its execution, and many other subjects of a kindred nature too numerous to be recapitulated.

*Second.* We also at once put out of view the various contentions iterated and reiterated under every proposition which, while apparently accepting the findings, virtually dispute them, such as the contentions that the private instrument did not amount to a sale to Stefani because certain alleged bankruptcy proceedings referred to in the opinion of the court excluded the right of the Suris brothers at that time to sell the property, that no possession followed in Stefani from the making of the private sale because that instrument was one not importing possession in and of itself without proof of manual tradition, and also numerous other contentions of a kindred character concerning the judicial proceedings taken by Schulze & Company to acquire title and the deed of consolidation by them recorded which we further do not stop to specifically point out.

With these things disposed of, the remaining contentions come to this: That the decision of the court below was plainly violative of the local law known as the mortgage law and the general provisions of the code concerning the necessity of the public record of title to real estate and the protection afforded by the same, and that moreover an obvious disregard of the mortgage law and the provisions of the code resulted from giving to the sale under private signature and the proceedings and subsequent transmutations of title based upon it the character of a just title sufficient on its face to be the basis of the ten years' prescription under the code which the court below upheld. But when stripped of the confusion in the mode in which they are stated and reduced to their ultimate significance, all the contentions on these subjects are exclusively based upon the assumption that the plaintiff below was entitled to the protection afforded by the mortgage law to third persons and to the assumed inadequacy of the title relied upon by the defendant to sustain the ten years' prescription as against a third person. The propositions therefore in their essence when correctly understood but ignore or dispute the findings of the court below upon which its conclusion was expressly based that the plaintiff was not a third person either because he was merely a person interposed as a means of enabling him apparently to assert in his own name for the benefit of his authors in title, rights which they were incapable themselves of asserting, indeed could not without fraud on their part enjoy, or because if not in a strict sense a person interposed, he was nevertheless not a third person within the intendment of the local law because he acquired with full knowledge of the want of title in his vendors and of the absence of possession on their part and also with knowledge not only of an outstanding title, but of possession as owner which was then and had been enjoyed by the defendant and his predecessors in right. Thus to

bring the propositions to the true basis upon which they rest serves at once without more to establish their absolute want of foundation and to demonstrate the correctness of the judgment below and the duty to affirm it.

*Affirmed.*