Porto Rico Fertilizer Co., Plaintiff and Appellant, v. Manuel V. Domenech, Treasurer of Puerto Rico, Defendant and Appellee.

No. 6690. Argued February 18, 1936.—Decided July 23, 1936.

*J. Henri Brown, C. Ruiz Nazario, G. E. González, G. Benítez Gautier,* and *W. L. Butte,* for appellant. *B. Fernández García* and *R. Cordovés Arana,* for appellee. *M. Acosta Velarde, amicus curiae.*

Mr. Chief Justice Del Toro delivered the opinion of the Court.

This case involves a refund of taxes. The plaintiff, a corporation organized under the laws of this Island, alleged that during the years 1924 to 1931 it borrowed certain sums of money from the Virginia–Carolina Chemical Corporation, a corporation of the State of Virginia having no agent in this Island; that the loans were contracted and the proceeds thereof delivered in Richmond, Virginia, and invested outside Puerto Rico in the purchase of materials used by the plaintiff in its business; and that the principal of said loans, as well as the interest thereon, were paid in Richmond by means of drafts drawn on funds deposited in New York.

It then set forth eight separate causes of action. The first one, literally copied, reads thus:

"6.—That under date of May 20, 1926, the plaintiff was notified by the Treasurer of Puerto Rico that said official had fixed in the sum of $786.29 the amount of the income tax payable by the Virginia–Carolina Chemical Corporation in respect of the interest paid to the latter by the plaintiff during the period from July to December, 1924, on account of the loans described in the second paragraph of the within complaint; notifying this plaintiff at the same time that it must pay said sum as withholding agent of the said Virginia–Carolina Chemical Corporation; and plaintiff alleges that on June 19, 1926, it paid the said sum of $786.29 to the Treasurer of Puerto Rico for the account above stated."

The other causes of action referred to the years 1925, 1926, 1927, 1928, 1929, 1930, and 1931, the payments having

been made respectively in 1926, 1927, 1928, 1929, 1930, 1931, and 1932.

The plaintiff further alleged that, as neither the Virginia-Carolina Chemical Corporation nor the loans involved ever had a situs in Puerto Rico, the tax collected on income earned and received outside Puerto Rico was illegal; that in accordance with Section 75 of Act No. 74 of 1925, the Treasurer of Puerto Rico is authorized to refund such taxes, and that on October 3, 1933, the plaintiff petitioned the Treasurer for a refund thereof and the Treasurer on the following day denied the petition as regards the payments referred to in the first, second, third, fourth, and fifth causes of action, based on subdivision (b) of Section 64 of the said Act No. 74 of 1925, and on the 30th of the same month of October, 1933, he also denied the petition as regards the payments mentioned in the sixth, seventh, and eighth causes of action.

It prayed for a judgment directing the refund of said taxes, with interest from the date on which they were paid.

The defendant demurred to the complaint for lack of facts sufficient to constitute a cause of action, and the court sustained the demurrer and granted the plaintiff leave to amend its complaint.

The plaintiff moved for a reconsideration, and for a judgment on the pleadings in the event that such reconsideration should be denied. The district court ratified its previous ruling and rendered judgment dismissing the complaint. The present appeal has been taken from that judgment. The assignment of errors, textually copied, reads as follows:

"1.—That the district court erred in holding that the complaint does not state facts sufficient to constitute a cause of action.

"2.—That the District Court of San Juan erred in holding that the plaintiff should have appealed to the Board of Review and Equalization before making payment of the sums claimed, and/or that said plaintiff should have paid the said taxes under protest; and in

holding that, it not having done so, said plaintiff had no cause of action.

"3.—That the District Court of San Juan erred in holding that the plaintiff should have appealed to the Board of Review and Equalization from the refusals by the Treasurer dated October 4, and 30, 1933, in connection with the claims for refund filed by the plaintiff with said official, and in holding that by reason of the failure to take such appeals the plaintiff had no cause of action."

The plaintiff-appellant in its brief admits that the first five causes of action which it alleged have prescribed and confines itself to argue its case as regards the sixth, seventh, and eighth causes of action. The Treasurer filed its brief in opposition and, after a hearing was held, the appeal was decided by this Court on November 13, 1935, affirming the judgment appealed from.

In the opinion rendered in support of its judgment, this Court expressed itself partly as follows:

"Act No. 74 of 1925, which is an income tax statute, in force at the time the payments the object of this appeal were made, by its Section 75, authorizes the Treasurer to remit, refund, and pay back all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected, and it imposes upon him the duty to make report to the Legislature at the beginning of each regular session of all transactions authorized under said section.

"The same act, by its Section 36 and under the heading, 'Limitations upon suits and proceedings by the taxpayer,' in subdivision (a) of such Section, provides that the decisions of the Board of Review and Equalization shall be final without prejudice to a reconsideration pursuant to law; and that the taxpayer shall pay under protest the entire tax which shall have been levied on him within the time specified, and within 30 days subsequent to such payment under protest he may bring suit in the proper district court, against the Treasurer of Puerto Rico. Said period of 30 days was extended by Act No. 8 of 1927 to one year. Subdivision (b) of said Section 76 provides that no suit or proceeding shall be maintained in any court for the recovery of any income tax or excess-profits tax alleged to have been erroneously or illegally assessed or collected, or of any pecuniary penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner

wrongfully collected, until a claim for refund or credit has been duly filed with the Treasurer and with the Board of Review and Equalization on appeal, according to the provisions of the law in that regard and the regulations established in pursuance thereof. The effect of said subdivisions is that the income tax must be paid under protest in order to be entitled to demand its recovery, and the suit against the Treasurer must be brought within one year; but that said suit shall not be maintained in any court, unless a payment under protest having been made, a claim for refund has been filed with the Treasurer and with the Board of Review and Equalization on appeal within said year or subsequent thereto. We have already stated that in the present case no payment under protest was made as should have been done.

"On the other hand, an appeal by the appellant herein to the Board of Review and Equalization from the decision of the Treasurer denying the refund claimed was necessary. The words of the statute regarding the appeal to the Board of Review and Equalization are sufficiently explicit to conclude therefrom that they authorized an appeal to said Board. Such appeal was not taken.

"Payment under protest not having been made, and no appeal having been taken to the Board of Review and Equalization, the judgment appealed from must be affirmed."

On grounds which it stated, the plaintiff petitioned this Court to modify "the opinion rendered in this case in the sense of holding that the doctrine laid down in the case of *American Colonial Bank of P. R.* v. *Gallardo* and *Soto Gras* v. *Domenech,* has not been changed in any way; conforming the opinion and judgment in this case to the doctrine established in the cited cases, or making the proper distinction, if this be possible, between the doctrine upheld in this case and the doctrine laid down in the other cases mentioned, with a view to avoiding grave confusion as regards the interpretation of the applicable law and jurisprudence, and to avoid grave injury to those taxpayers who, in good faith, have heretofore acted and proceeded, in the protection and defense of their rights, in accordance with the holding of this Court in the cases above cited."

By an order of January 14th last, the Court reconsidered its judgment of November 13, 1935, and set the case for re-hearing on February 18, 1936. Both parties maintained their respective positions, and attorney Mariano Acosta Velarde intervened in the case as *amicus curiae* and argued, in short, that in Puerto Rico "the income taxpayer has the right, de-rived from Act No. 74 of 1925 and the regulations pertain-ing thereto, to obtain a refund of undue payments made, within four years from the erroneous payment of an income tax, upon filing a claim for refund and the corresponding suit, even though the payment has not been made under pro-test."

The ultimate facts to be considered for a determination of the appeal are, then, that the plaintiff, on October 3, 1933, filed with the defendant Treasurer three claims for refund of income taxes which it had paid without protest in 1930, 1931, and 1932; that the Treasurer denied said claims on October 30, 1933, and that on November 3, 1933, the plaintiff applied to the District Court of San Juan for relief against such denial.

That being so, since the taxes paid pertained to the year 1925, and the payments thereof were made subsequent to that year, the case must be governed by Act No. 74 of 1925.

Section 75 of said act authorizes the Treasurer to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without author-ity, and all taxes that appear to be unjustly assessed or ex-cessive in amount, or in any manner wrongfully collected.

The authority can not, indeed, be broader. The Treas-urer acts by himself. He is the one called upon to pass on the merits of each claim. The same Section 75 of the act only imposes upon him the duty to make report to the Leg-islature of Puerto Rico at the beginning of each regular ses-sion of all transactions carried out by him in the exercise of such authority.

It is incumbent on the taxpayer himself to make his income return and, as soon as practicable after the return is filed, the Treasurer of Puerto Rico shall examine it and shall determine the correct amount of the tax.

If no amount is shown as the tax by the taxpayer upon his return, or if no return is made by him, the deficiency shall be the amount by which the tax exceeds the amounts previously assessed. Upon determining such deficiency, the Treasurer shall notify the taxpayer, and the latter within 30 days after such notice is mailed, may file an appeal with the Board of Review and Equalization, alleging in writing and under oath the legal facts and grounds on which such appeal is based.

If the Board renders a decision in favor of the taxpayer, no part of the deficiency determined by the Treasurer but disallowed by the Board shall be assessed; and the Treasurer may, within the period of one year, begin, without assessment, a proceeding in a district court of competent jurisdiction for the collection of any part of the amount so disallowed. Of course, in such proceeding the taxpayer shall have an opportunity to defend himself, and the decision rendered must be in accordance with the facts and the law.

The foregoing is provided in greater detail by Sections 54, 56, and 57 of the Act. See also Sections 62 and 64.

It is prescribed in Section 76(a) that the decisions of the Board shall be final, and the tax must be paid under protest by the taxpayer if he intends to bring his case before the courts of justice.

It is further provided in Section 76 that the suits thus instituted by the taxpayers shall have preference on the court calendars; and the defendant must allege at the same time and in one sole answer all his defenses, and the case must be set down to be heard promptly and decided at one hearing.

Further on the Section makes reference to a reconsideration by the Board, and then enacts that—

"(b) No suit or proceeding shall be maintained in any court for the recovery of any income tax or excess-profits tax alleged to have been erroneously or illegally assessed or collected, or of any pecuniary penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Treasurer and with the Board of Review and Equalization on appeal, according to the provisions of law in that regard, and the regulations established in pursuance thereof."

Does this subdivision (b) mean that after a denial of the claim by the Treasurer and an affirmance by the Board of such denial, the filing of a claim for refund is required and, if the Treasurer refuses the same, it is necessary to again appeal to the Board before resorting to the courts of justice?

It may be so inferred, at first view, from the wording itself of the act; and that is what we declared to be the proper procedure in the opinion we rendered in support of the judgment, set aside by the order of January 14th last.

However, a further consideration of the matter leads us to the conclusion that it is not possible that such should have been the intention of the Legislature. Why such a duplication? If the Treasurer has denied the claim and the Board has affirmed his denial, and the taxpayer has paid under protest, way resort anew to the Treasurer and, above all, why appeal again to the Board?

This Court has already said in the case of *American Colonial Bank of P. R.* v. *Domenech, Treasurer,* 43 P.R.R. 853: "We also agree with the appellant that if after a recourse to the Board of Review and Equalization a taxpayer pays under protest no necessity arises after such payment to recur to said board. The intention of the Legislature was to give a right of action after payment under protest." However, in drafting our former opinion in the instant case our previous holding passed unnoticed, and it was upon our at-

tention being called to it that a rehearing was ordered and the case opened for further argument and determination of the questions involved therein.

It is thus settled that where the taxpayer, feeling dissatisfied with the income tax imposed upon him by the Treasurer, presents his claim to that official and receives an adverse decision and then takes an appeal to the Board, which also decides his case adversely, and he pays under protest, he may, within the period of 30 days fixed by Act No. 74 of 1925, Section 76, first paragraph, have recourse to the judicial tribunals without further proceedings, that is, without the necessity of filing a claim for refund with the Treasurer and resorting anew to the Board of Review and Equalization.

Under the present state of the law, we do not find that the income taxpayer can resort to the courts of justice without paying under protest. If such taxpayer is not satisfied with the tax, he may, within a period of 30 days after being notified, appeal to the Board and obtain therefrom a disallowance, in whole or in part, of the deficiency determined by the Treasurer as provided in Section 57 of the act; and he may, if the decision of the Board is adverse to him, pay under protest and, within the 30 days following such payment, apply for relief to the courts in the exercise of the right which Section 76 of the said Act of 1925 acknowledges in his favor. He may also, even though he has made no payment under protest, if he deems that the tax was erroneously or illegally assessed to or collected from him, and that it is unjust or excessive, apply to the Treasurer and request that this official, in the exercise of the power granted to him by Section 75 of the act, remit said tax and reimburse to him the amount thereof previously paid; but if the decision of the Treasurer should be adverse, then he can take no appeal therefrom to the judicial tribunals.

The question of the inexistence of the remedy by suit, when no payment under protest is made, has already been

decided by this Court in the case of *Compañia Agrícola de Cayey, Ltd.* v. *Treasurer,* 47 P.R.R. 505, as follows:

"It is entirely clear that from 1921 until 1925 the Treasurer was not directly authorized to pay back income taxes as he had been by the Act of 1919. The substantive relief given by the latter act was abrogated. Hence it may be said that the remedy by suit likewise disappeared. From 1921 on a condition precedent for suits was expressly a payment under protest. While the Act of 1921 did not in terms suppress the right to sue it set forth the manner in which taxes could be recovered. And this was the general understanding. We have before us a chart prepared by the Economic Commission of the Legislature which spreads out the acts now in force, and the Act of 1919 is omitted. On the whole, while the period elapsed is not very great, contemporaneous construction considered, the Act of 1919 is no longer in force. So that the Act of 1925, while it gave a substantive right to make an appeal to the Treasurer, even if the taxes were not paid under protest, did not continue in force or revive the remedy of the Act of 1919."

The decisions in *Serrallés* v. *Treasurer,* 30 P.R.R. 220, and *McCormick* v. *Bonner,* 44 P.R.R. 419, invoked by the *amicus curiae,* are inapplicable as they were based on the repealed Act of 1919.

Under any aspect, therefore, in which the case may be viewed, the judgment appealed from must be affirmed.

■ Here we would end this opinion, had there not been raised and argued at length the question as to the bearing which the holding of this Court in the cases of *American Colonial Bank* v. *Domenech, Treasurer,* and *Soto Gras* v. *Domenech, supra,* might and should have upon the determination of the instant case.

The first of said cases was hereinbefore cited and applied with approval in connection with the point that a taxpayer who has already submitted a claim to the Treasurer, appealed to the Board, and paid under protest, is not bound to file a claim for refund with the Treasurer and to appeal anew to the Board, in order to be entitled to bring his case before

the courts. That is not the point which we must now consider, but the following:

Notwithstanding an income tax case was involved, this Court held that, in accordance with Act No. 8 of 1927, providing for the payment of taxes under protest, the period granted to the taxpayer to bring suit was one year; and it added:

"Section 3 of Act No. 8 provided. a manner of payment and right of action that was prospective and exclusive of previous manners. Hence a previous act requiring suit within thirty days after action of the Board of Review and Equalization was necessarily repealed." *American Colonial Bank* v. *Domenech*, 43 P.R.R. 853.

There is no question that the Court was referring to subdivision (*a*) of Section 76 of Act No. 74 of 1925.

In the second case, that is, in the *Soto Gras* case, *supra*, this Court expressed itself partly as follows:

"After our decision in the above entitled case, the appellant, the People of Puerto Rico, presented a motion for reconsideration. This motion was duly heard and is now before us. Because other matters have been sufficiently discussed or disposed of in our original opinion or in other jurisprudence of this court, the only question that remains to be considered is whether the District Court of San Juan lacked jurisdiction because the amount sought to be recovered by the plaintiff was less than $500 and the suit should have been filed in a municipal court. The government bases its contention on the fact that Section 76 of Act No. 74 of 1925 (Session Laws, p. 400) has, according to our decision in *American Colonial Bank* v. *Treasurer,* 43 P.R.R. 853, been repealed by Act No. 8 of 1927 (Session Laws, p. 122) as to the procedure of payments under protest. Under the Act of 1925 it was clear that the taxpayer would have to file his complaint in a district court. However, if that act was repealed, the general provisions of law were applicable. Up to 1925 we shall assume for the moment that a taxpayer had to file a claim for a refund of less than $500 in the municipal court. What we held in *American Colonial Bank* v. *Treasurer,* supra, was that matters of procedure under the Act of 1925 had been repealed by the Act of 1927. We were not touching upon the question of jurisdiction. Hence we are inclined to agree with the contention of the appellee

and the suggestion of the appellant that both acts could coexist with respect to the question of jurisdiction if the later act had no words showing an intention to give jurisdiction to the municipal court. If both acts may subsist, then the intention of the legislature to require a taxpayer to proceed before a district court was perfectly clear in the act of 1925."

It was insisted that the district court had jurisdiction.

Both decisions were accepted and applied by the Circuit Court of Appeals for the First Circuit as holding that Section 76 of Act No. 74 of 1925 had been repealed by Act No. 8 of 1927, that Court expressing itself, in the case of *Domenech* v. *Verges,* 69 F. (2d) 714, 716, thus:

"It is contended by counsel for the appellant that Act No. 8 of the Laws of 1927, providing for the recovery of taxes paid under protest, does not apply to the recovery of income taxes paid under protest; that it was a substitution for a general law enacted prior to the imposition of income taxes; and that, while it expressly repealed Act No. 9 approved June 23, 1924, and also Act No. 84 approved August 20, 1925, which acts provided generally for the recovery of taxes paid under protest, since it did not expressly refer to the Income Tax Act of 1924 approved August 6, 1925, in its repealing section, it should not be construed as repealing or modifying section 76(*a*) or (*b*) of that act relating to the recovery of income taxes paid under protest, though it repealed all conflicting laws or parts of laws.

"The Supreme Court of Puerto Rico, however, in the case of *American Colonial Bank of Porto Rico* v. *Juan G. Gallardo,* 43 D.P.R. 853, decided July 26, 1932, and in the case of *F. Soto Gras* v. *Domenech, Treasurer,* in an opinion handed down December 20, 1933, on a motion for reconsideration, has held that the method of procedure provided for the recovery in Section 76 of the Income Tax Act of 1924 of income taxes paid under protest, was repealed by Act No. 8 of the Laws of 1927.

"The interpretations of local law by the Supreme Court of Puerto Rico, unless clearly wrong, are followed by this court. The insular court is in a better position to interpret the intent of the local legislature than this court, and we are inclined to follow its construction in this instance, *De Villanueva* v. *Villanueva,* 239 U. S. 293, 298, 299, 36 S. Ct. 109, 60 L. Ed. 293; *Cardona* v. *Quiñones,*

240 U. S. 83, 88, 36 S. Ct. 346, 60 L. Ed. 538; though we think Act No. 8 of the Laws of 1927 may be susceptible of another reasonable interpretation.''

Were that construction to stand, all that we have said and held in this opinion in applying section 76 of Act No. 74 of 1925, would fall to the ground.

We realize the difficulty of the situation, but a careful and conscientious study of the problem compels us to solve it in an opposite sense to that favored in the aforesaid case of American Colonial Bank, supra, which was confirmed, but really not followed throughout all its consequences, in the *Soto Gras* case, *supra,* since it was finally decided to apply the jurisdictional rule fixed in the special statute and not in the general law.

The grounds which we have for reaching the conclusion stated are that Act No. 74 of 1925 is a special law, complete in itself, regarding a specific tax, the income tax, perfectly articulated and which must prevail over the general law regarding suits in cases of taxes paid under protest, especially since such general law contains a repealing clause which reads:

''Section 6.—Act No. 9 of June 23, 1924, and Act No. 84 of August 20, 1925, are hereby repealed, as well as all laws or parts of laws in conflict herewith; Provided, That any act, proceeding or right born under the protection of the laws hereby repealed, shall continue so protected by the provisions thereof, until its termination.'' Laws of 1927, p. 124–126.

The laws thus expressly repealed, that is, Act No. 9 of 1924 and Act No. 84 of 1925, were also statutes of a general character, as were Act No. 17 of 1920, repealed by Act No. 9 of 1924, and Act No. 35 of 1911—the first one on the subject—which was repealed by Act No. 17 of 1920.

After the general system regarding the authorization of suits in cases of taxes paid under protest went into effect, there began to be enacted the special income tax laws, complete in themselves, it being the clear purpose of the legislator

that both should subsist within their own sphere of action. If any doubt should remain, it would be dispelled by the action of the Legislature itself during this current year of 1936, in amending said Section 76 of Act No. 74 of 1925 by adding thereto the following proviso: *"Provided,* That if the case is decided on a first reconsideration, no further appeal shall be entertained by the Board, except as provided in paragraph *(b)* of this section"; which implies that it regarded said Section as in force, notwithstanding the general law it had enacted in 1927, relating to the payment of taxes under protest. See the cases of *Kessler* v. *Domenech,* 49 P.R.R. 189 and *Succession of Puente* v. *People et al.,* 19 P.R.R. 532.

For the foregoing reasons, the appeal must be dismissed and the judgment appealed from affirmed.