**BENITEZ v. BANK OF NOVA SCOTIA**
(three cases).

Nos. 3488, 3486, 3487.

Circuit Court of Appeals, First Circuit.
Jan. 10, 1940.

Rehearing Denied Feb. 21, 1940.

744

Brief for debtor, appellant.

Carlota Benitez Sampayo, pro se.

Walter L. Newsom, Jr., and Brown, Gonzalez & Newsom, all of San Juan, P. R. (Henri Brown, of San Juan, P. R., on the brief), for appellee.

Before WILSON and MAGRUDER, Circuit Judges, and McLELLAN, District Judge.

MAGRUDER, Circuit Judge.

These cases are related and will be dealt with in a single opinion.

### No. 3488.

Complainant, appellee, on October 20, 1936, filed in the District Court of the United States for Puerto Rico a bill in equity against Benitez Sugar Company, a corporation, and various persons, including the present appellant, individually and as members of the "Comunidad" Jose J. Benitez e Hijos, seeking foreclosure of certain securities and of a crop lien in satisfaction of various joint and several obligations of the corporation and the Comunidad.

This Comunidad had large holdings of land on the Island of Vieques, Puerto Rico, used for growing sugar cane and for pasturage. It also owned cattle, buildings, agricultural equipment, and held the capital stock of the Benitez Sugar Company, one of the defendants. The latter corporation owned a sugar factory, agricultural land, a large number of live stock, equipment, buildings, etc., all on the Island of Vieques, and devoted to the growing of sugar cane and the manufacture of raw sugar and molasses. The operations of the Comunidad and the Benitez Sugar Company had for many years been conducted "as a single and integrated enterprise". The Comunidad had been constituted by contract between the widower and the heirs of Carlota Sampayo Guzman in 1917, and by successive renewals extended to July 30, 1935. On July 1, 1933, the Bank of Nova Scotia, under the terms of a crop loan agreement with the Comunidad, took possession of the properties and operated them for the account of the Comunidad and the Sugar Company, applying the net proceeds to the repayment of the crop loans. When the contract regulating the Comunidad expired on July 30, 1935, no partition or liquidation of the business was had, but the Bank continued the operation of the business as theretofore, until a receiver took over.

Upon the filing of the bill for foreclosure a receiver was appointed ex parte, and his appointment was subsequently confirmed after hearing. The receiver took possession of said properties and operated the enterprise under orders of the court. A final decree was rendered on August 22, 1938, in favor of complainant bank. The decree adjudged that the Comunidad and the Sugar Company were jointly and severally indebted to the bank in the principal sum of $673,569.82 with interest; that the members of the Comunidad were individually liable in proportion to their respective participations therein, that of the present appellant being a one-twelfth interest; that defendant members of the Comunidad, in proportion to their respective liabilities, and the defendant Benitez Sugar Company, must on or before September 1, 1938, pay to the bank the said sum with interest, in default of which a special master was directed to sell at pub-

lic auction the various pledged and mortgaged properties. Provision was made for an eventual deficiency judgment.

On November 17, 1938, appellant, being intent upon appealing from the decree, filed in the office of the Clerk of the District Court a so-called "petition for severance" which recited that a "notice of severance" dated October 7, 1938, had theretofore been served on the other parties, and which requested the court to enter an order providing as follows:

"(a) Setting a day certain (not later than November 22nd, 1938) on which she may present to the Hon. Robert A. Cooper, Judge of this Court, her amended Notice of hearing on her Petition for Severance in the above entitled cause, together with proof of service thereof, and her Petition for Leave to Appeal.

"(b) That upon presentation of said amended notice, with proof of service thereof to the Hon. Robert A. Cooper, Judge of this Court, together with the Petition for Leave to Appeal and the Assignment of Errors, this Hon. Court enter an order severing the record and permitting your petitioner to prosecute her appeal without joining her co-parties."

An "amended notice of hearing on petition for severance", dated November 17, 1938, which was served on the other parties, read in part as follows:

"Please take notice that on November 23rd; 1938 the petition of Carlota Benitez Sampayo for severance of the record of the above entitled cause, together with her petition for leave to appeal from each and every one of the orders or decrees made or entered in the course of these proceedings and up to this date and, in particular, from the final decree entered herein on August 22, 1938 and other acts done and orders entered pursuant to said final decree, will be presented to the Hon. Robert A. Cooper, Judge of the District Court of the United States for the District of Puerto Rico."

This "petition for severance" came on for hearing on November 23, 1938, and was denied. A formal order of severance was evidently considered by the District Court not to be necessary to the perfecting of the appeal (see United States v. King & Howe, Inc., 1935, 2 Cir., 78 F. 2d 693, 695), for on the same day the court issued an order granting appellant's petition for leave to appeal and citation was served on appellee. On February 24, 1939, this order was, upon the motion of the appellee, vacated by the District Court on the ground that it had been improvidently granted, the statutory three-months' period for appeal having expired. 28 U.S.C. § 230, 28 U.S.C.A. § 230.

Appellant now appeals from this order of February 24, 1939, vacating the earlier order allowing the appeal. We believe that this vacating order is a "final decision" within the meaning of 28 U.S.C. § 225, 28 U.S.C.A. § 225, and hence appealable to this court. If allowed to stand, it would finally dispose of the controversy. It would leave the decree of August 22, 1938, in effect and immune from attack by appeal, because the lapse of the three-months' period would preclude a new application, either to the District Court or to a judge of this court, for leave to appeal. The situation is therefore distinguishable from cases where an order is entered vacating a decree pro confesso and permitting the defendant to file an answer. O'Brien v. Lashar, 1920, 2 Cir., 266 F. 215; Board of Supervisors v. Knickerbocker Ice Co., 1935, 2 Cir., 80 F.2d 248; Beighle v. Le Roy, 1938, 3 Cir., 94 F.2d 30. It is also distinguishable from orders refusing in the first instance to allow an appeal. Such orders are not reviewable as "final decisions" because they do not put an end to the controversy; the denial is not res adjudicata as to the right to appeal and an application can still be made to another judge. 28 U.S.C. § 228, 28 U.S.C.A. § 228.

In her opposition to the motion to vacate the order of November 23, 1938, allowing the appeal, appellant "admits that on November 23, 1938 she filed and presented to the Hon. Judge of this Court a Petition for Appeal from said final decree together with her assignment of errors and prayer for reversal and that on said date this Court entered the order allowing her appeal filed herein, as a matter of right, as provided by law." This application was made one day after the lapse of the statutory period. Walters v. Baltimore & Ohio Railroad Co., 1935, 3 Cir., 76 F.2d 599; Northwestern Public Service Co. v. Pfeifer; 1929, 8 Cir., 36 F. 2d 5, 7. As was said in Muckelroy v. Baldwin, 1934, 8 Cir., 70 F.2d 728, 729, "the three months' statutory period for appeal is mandatory and jurisdictional and, being such, it cannot be extended by

waiver, consent, or even order of court." Accord, Robie v. Hart, Schaffner & Marx, 1930, 8 Cir., 40 F.2d 871; Vaughan v. American Insurance Co., 1926, 5 Cir., 15 F.2d 526, 527; Sprague v. Chicago B. & Q. Railroad, 1927, 8 Cir., 17 F.2d 768. See Alaska Packers Ass'n v. Pillsbury, 1937, 301 U.S. 174, 57 S.Ct. 682, 81 L. Ed. 988.

■ Appellant refers to what we said in Baez v. People of Puerto Rico, 1936, 1 Cir., 82 F.2d 317, 321: "An appeal is a matter of right. It is the date of presentation of the application to the court or judge that fixes the right of the applicant to his appeal, not the date of its allowance." This is true; if application is seasonably made to the judge, the appeal will not be defeated because the judge delayed in acting on it, a circumstance beyond the control of the party appealing. Cardona v. Quinones, 1916, 240 U.S. 83, 36 S.Ct. 346, 60 L.Ed. 538; J. D. Randall Co. v. Fogelsong Mach. Co., 1912, 6 Cir., 200 F. 741. But, as noted above, in the present case the application was not made until after the expiration of the three-months' period.

■ It is contended that the so-called "petition for severance" may be considered an application for leave to appeal. But this petition·was not so regarded by appellant, who on November 23, 1938, filed a separate application for leave to appeal. The "petition for severance" gave notice of an intention to apply for leave to appeal. This, however, is not equivalent to an application. Osborn v. United States, 1931, 4 Cir., 50 F.2d 712, 714. Robie v. Hart, Schaffner & Marx, supra, 40 F.2d at page 872; Vaughan v. American Insurance Co., supra, 15 F.2d at page 527; United States v. New National Coal & Mining Co., 1934, 7 Cir., 72 F.2d 168, where the court said, "Merely declaring that he will appeal does not of itself amount to taking an appeal".

■ Furthermore, the "petition for severance" itself was not presented to the court until November 23, 1938. Even if we considered this petition as in effect an application for appeal, the filing of it with the clerk of the court on November 17 did not fulfill the statutory requirement. As this court said in Baez v. People of Puerto Rico, 1936, 1 Cir., 82 F.2d 317, at page 321:

"The filing of an application for appeal in the office of the clerk of the court where the judgment or decree is entered will not be regarded as an application 'duly made' under section 230, so as to stop the running of the statute, unless it be where the sole judge of that court or all of its judges are out of the jurisdiction, or incapacitated, so that an application cannot be made to a judge of that court within the three months period. Where the sole judge or all the judges of the court in which the judgment or decree is entered are out of the jurisdiction, or incapacitated, the filing of the application for appeal in the office of the clerk within three months from the entry of judgment or decree will not be permitted to defeat the right of the appellant."

To the same effect, see United States v. New National Coal & Mining Co., supra, 72 F.2d at page 168, where the court said, "The filing of the petition for appeal avails nothing unless within the statutory time allowed for taking the appeal it is brought to the attention of the judge for action thereon." See also Green v. City of Lynn, 1898, 1 Cir., 87 F. 839; Camden Iron Works Co. v. City of Cincinnati, 1917, 6 Cir., 241 F. 846; Ross v. White, 1929, 6 Cir., 32 F.2d 750, 752.

■ A further point remains. On October 13, 1938, appellant filed in the District Court a farmer-debtor's petition for composition or extension under Section 75 of the National Bankruptcy Act, 11 U.S. C. § 203, 11 U.S.C.A. § 203; on the same day the court approved the petition as properly filed under said Section and referred the same to a Conciliation Commissioner. Appellant contends that the pendency of this petition in the bankruptcy court operated to toll the three-months' period for appeal from the equity decree of August 22, 1938. We find no warrant in any provision of the Bankruptcy Act for this contention. Section 75, sub. o, 11 U.S.C. § 203, sub. o, 11 U.S.C.A. § 203, sub. o, provides that certain enumerated proceedings "against the farmer or his property" shall not be maintained in any court while the petition under Section 75, subs. a to r is pending. Kalb v. Feuerstein, 60 S.Ct. 343, 84 L.Ed. ——, Jan. 2, 1940. But this in no wise forbids an appeal by the farmer from an adverse equity decree entered prior to the filing of the petition in the bankruptcy court; and such appeal would have to be taken within the three-months' period provided in 28 U.S.C. § 230, 28 U.S.C.A. § 230.

■■ The order of November 23, 1938, allowing the appeal having been improvidently entered, the district court had power to vacate it. United States v. Nordbye, 1935, 8 Cir., 75 F.2d 744; Farmers' Loan & Trust Co. v. McClure, 1897, 8 Cir., 78 F. 211; Mackenzie v. Pease, 1906, 7 Cir., 146 F. 743. Even if the District Court had not vacated the order, we should still have been obliged to take note of our lack of jurisdiction and dismiss the appeal from the decree of August 22, 1938. Walters v. Baltimore & Ohio Railroad Co., 1935, 3 Cir., 76 F.2d 599.

The order appealed from must be affirmed.

### No. 3486.

This is the original abortive appeal from the decree of August 22, 1938. Appellee moves to docket the case and dismiss the appeal under Section 3 of our Rule 16 for failure of appellant to file the transcript of record. The appeal must be dismissed on the more fundamental ground just stated in No. 3488, namely that application for appeal was not made within the statutory period.

### No. 3487.

This is an appeal from an order of the District Court of the United States for Puerto Rico dismissing appellant's petition under Section 75 of the Bankruptcy Act.

After the entry of the equity decree mentioned in No. 3488, above, appellant on October 13, 1938, one hour before the foreclosure sale pursuant to said decree, filed in the District Court her petition as a farmer-debtor for composition or extension under Section 75 of the National Bankruptcy Act, 11 U.S.C. § 203, 11 U.S.C.A. § 203. She did this in the belief that the pendency of this petition would operate under Section 75, subs. o and p automatically to stay all further proceedings in the equity case and would, under Section 75, sub. n, draw into the exclusive jurisdiction of the bankruptcy court all the real and personal property of the Comunidad, or at least her undivided fractional interest in this specific property. In addition to her interest in the farming operations of the Comunidad, appellant based her claim to be a "farmer" on the fact that at her home in the City of Ponce, P.R., where she lives with her husband, she has for several years engaged in a small way in raising and selling poultry and eggs, from which she derives a profit of about $50 a month.

The debtor's schedule of debts, filed with her petition, listed her pro rata liability for all the debts of the "integrated enterprise"—the Comunidad and Benitez Sugar Company; also a debt of $500 to her personal attorneys in this litigation, and a trivial debt on account of the poultry business. The schedule of the debtor's property listed all the specific real and personal property of the Comunidad and the Sugar Company, in which she claimed a one-twelfth interest. There was also listed an unspecified sum alleged to be owing the debtor by the "integrated enterprise", the amount of which could only be determined upon an accounting. In addition, petitioner listed certain personal property wholly owned by her—household effects, $1,850, chickens and pigeons, together with lofts, poultry houses, supplies, etc., $1,199.

The petition was presented ex parte, and on the same day the acting judge of the bankruptcy court issued an order approving it as properly filed under Section 75 (General Orders in Bankruptcy, L. par. 2, 11 U.S.C.A. following section 53), and referred the same to a Conciliation Commissioner. In due course, the debtor filed her inventory and proposal for extension.

Having failed to obtain from creditors the requisite assents to her proposal for extension, the debtor on November 30, 1938, amended her petition and asked to be adjudged a bankrupt under Section 75, sub. s, 11 U.S.C.A. § 203, sub. s. The debtor further asked that her property be appraised, her exemptions set aside, and "that she be allowed to retain possession or be placed in possession of all of the remainder of her property" under the conditions provided in said subsection (s).

On December 1, 1938, the Bank of Nova Scotia as a creditor filed a motion to dismiss the petition under Section 75 on the grounds that the petitioner was not a "farmer"; that the petition was not filed in good faith but for the purpose of interfering with the pending equity proceedings; and that the proposal for extension was impracticable and was not presented in good faith.

■■ The debtor objects that Section 75 contains no provision for such a motion to dismiss. This is true but not im-

748

portant. The pro forma order of the court, on the day the petition was filed, approving the same as having been properly filed under Section 75, does not preclude the court at a later stage of the proceedings from taking note of a possible lack of jurisdiction, on its own motion, even without a motion by an interested party. See Davis v. Shackleford, 1937, 8 Cir., 91 F.2d 148. The District Court held a hearing on the jurisdictional issues, after due notice to the debtor. On January 3, 1939, the court rendered an opinion, filed findings of fact and conclusions of law, and decreed that the petition of the debtor be dismissed with costs. Appeal was duly taken from this decree.

The amended petition under Section 75, sub. s of the Bankruptcy Act could not properly be dismissed, upon the facts here appearing, on the ground of lack of good faith on the debtor's part. This is settled by the decision of the Supreme Court in John Hancock Mutual Life Insurance Co. v. Bartels, 60 S.Ct. 221, 84 L.Ed. —, decided December 4, 1939.

We must therefore consider whether the debtor is a "farmer" within the meaning of Section 75.

An initial difficulty is to determine the applicable definition of "farmer" for purposes of Section 75 of the Bankruptcy Act. Originally the term "farmer" was not defined or used in the Act, but Section 4, sub. b, forbade the involuntary adjudication of "a wage earner or a person engaged chiefly in farming or the tillage of the soil". 30 Stat. 544, 47 Stat. 47, 11 U.S.C.A. § 22, sub. b. On March 3, 1933, the Act was amended by adding Sections 73–77. 47 Stat. 1467, 11 U.S.C.A. § 201–207. Section 74 dealt with compositions or extensions in the case of "any person excepting a corporation". Section 74, sub. l did not use the term "farmer" but provided that "No order of liquidation or adjudication shall be entered in any proceeding under this section instituted by or against a wage earner or a person engaged chiefly in farming or the tillage of the soil unless the wage earner or a person engaged chiefly in farming or the tillage of the soil consents." 47 Stat. 1469, 11 U.S.C.A. § 202, sub. l. Section 75 dealt specially with agricultural compositions or extensions. Subsection c of that section provided for the filing of a petition by a "farmer". Subsection r

provided, 47 Stat. 1473, 11 U.S.C.A. § 203, sub. r:

"For the purpose of this section and section 74, the term 'farmer' means any individual who is personally bona fide engaged primarily in farming operations or the principal part of whose income is derived from farming operations, and includes the personal representative of a deceased farmer; and a farmer shall be deemed a resident of any county in which such farming operations occur."

This definition was not made applicable to Section 4, sub. b above quoted. The first Frazier-Lemke Act, 48 Stat. 1289, added subsection s, but made no change in the definition. The Act of May 15, 1935, 49 Stat. 246, took pains to establish a consistent definition of "farmer" throughout the Bankruptcy Act. Section 4, sub. b was amended to say "except a wage earner or a farmer". Section 74, sub. l was amended to read "a wage earner or a farmer". Section 75, sub. r was amended to read:

"For the purposes of this section, section 4 [22] (b), and section 74 [202], the term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations, and includes the personal representative of a deceased farmer; and a farmer shall be deemed a resident of any county in which such operations occur."

The second Frazier-Lemke Act (49 Stat. 943) enacted a new subsection s of Section 75 but made no change in the definition of "farmer", which stood until the passage of the Chandler Act, 52 Stat. 840, 11 U.S.C.A. § 1 et seq.

For the first time, by the Chandler Act, a definition of "farmer" was inserted in Chapter 1, Section 1 of the Bankruptcy Act, entitled "Definitions". Section 1(17) of the Bankruptcy Act, 11 U.S.C.A. § 1(17), as thus amended, now reads as follows:

"Section 1. Meaning of words and phrases.

"The words and phrases used in this Act [title] and in proceedings pursuant

hereto shall, unless the same be inconsistent with the context, be construed as follows: * * *

"(17) 'Farmer' shall mean an individual personally engaged in farming or tillage of the soil, and shall include an individual personally engaged in dairy farming or in the production of poultry, livestock, or poultry or livestock products in their unmanufactured state, if the principal part of his income is derived from any one or more of such operations;".

Section 75 is part of "this Act", that is, the Bankruptcy Act. Subsections c and s of Section 75 speak of the filing of a petition, and an amended petition, by a "farmer". There is nothing in the context of these subsections inconsistent with applying to the word "farmer" the new definition in Section 1(17). Section 75, sub. r contains the old definition of "farmer"; but this definition cannot be considered part of the "context" of the other subsections in which the word "farmer" is used. If it were so considered, it must equally be considered part of the "context" of Section 4, sub. b in which "farmer" appears, because by the express provision of Section 75, sub. r the definition of "farmer" there given was to apply to Sections 4, sub. b and 74 as well as to Section 75.

It is clear that the new definition of "farmer" in Section 1(17) was intended to apply to Section 4, sub. b. The Report of the House Committee on the Judiciary[1] says:

"'Farmer'.—New clause (17): The amendment of May 5 [15], 1935 (11 U.S.C. Ann., sec. 203), extends the meaning of the term 'farmer' to include dairy farmers and persons engaged in the production of poultry or livestock or its products in their unmanufactured state, whose principal income is derived from any one or more of these corporations. Correspondingly, section 4 of the act is amended by substituting the phrase 'a farmer' for the language 'a person engaged chiefly in farming or the tillage of the soil.' (See 11 U.S.C.Ann., sec. 22.) Pursuant to this purpose of Congress to expand the meaning of the term, it would seem advisable to formulate a new definition and include it in section 1 as clause (17)."

We find no intimation in this language of an intention on the part of Congress to reintroduce the awkward situation of having "farmer" mean one thing in Section 4, sub. b and something else in Section 75, a situation which Congress had carefully eliminated by the Act of May 15, 1935, supra. The Chandler Act in applying the new definition of "farmer" to Section 4, sub. b, necessarily amends Section 75, sub. r which reads, "For the purpose of this section, section 4 [22] (b) and section 74 [202], the term 'farmer' includes" etc. Section 4, sub. b, is now governed by the general definition in Section 1(17), and there is no longer any Section 74, which has been transposed to a later part of the Act, old Section 74, sub. l, referred to above now appearing as Section 379, 52 Stat. 913, 11 U.S.C.A. § 779. The 1938 edition of the United States Code, 11 U.S.C. § 203, sub. r, 11 U.S.C.A. § 203, sub. r, includes old Section 75, sub. r as though it had been unaffected by the Chandler Act. But the codification is only presumptive evidence of the laws, 1 U.S.C. § 54(a), 1 U.S.C.A. § 54(a); and we are persuaded from a review of the legislative history that the Chandler Act amendment of Section 1(17) by implication repeals Section 75, sub. r, so far as the old definition of "farmer" is inconsistent with the new. See Section 4 of the Chandler Act, 52 Stat. 940, containing the cautionary provision that "* * * all Acts or parts of Acts inconsistent with any provisions of this amendatory Act are hereby repealed."[2]

---

[1] H.Rep. No. 1409, 75th Cong., 1st Sess. (Committee on the Judiciary, July 29, 1937), p. 6.

[2] The Report of the House Committee on the Judiciary, referred to in footnote 1, supra, contains an addendum indicating the changes in existing law made by the Chandler bill as it then read. At p. 144 of this Report there is this statement: "Sec. 75. Agricultural Compositions and Extensions. (No change.)" This can hardly be taken literally for, as has been pointed out, Section 75, sub. r has certainly been amended to the extent that the old definition of "farmer" therein contained is no longer to be applied to Section 4, sub. b. "No change" seems to refer not to the definition, but to the substantive and procedural provisions dealing with relief to distressed farmers. It may be noted further that Section 2(a) of the Chandler Act, 52 Stat. 939, 11 U.S.C.A. § 203 note, does specifically amend Section 75 in certain particulars not now relevant.

██ ██ We take it, therefore, that the applicable definition is found in the new Section 1(17): "'Farmer' shall mean an individual personally engaged in farming or tillage of the soil, and shall include an individual personally engaged in dairy farming or in the production of poultry, livestock, or poultry or livestock products in their unmanufactured state, if the principal part of his income is derived from any one or more of such operations". Does the debtor in the case at bar fit within this definition? The phrase "an individual personally engaged in farming" is not a "term of art". "In every case the totality of the facts is to be considered and appraised." First National Bank & Trust v. Beach, 1937, 301 U.S. 435, 439, 57 S.Ct. 801, 803, 81 L.Ed. 1206. We think the District Court was right in concluding that the debtor was not "personally engaged" in the farming operations of the Comunidad on Vieques Island. She was a party to the community contract which designated her father as general manager, but she was a housewife living with her husband in the City of Ponce, P. R., and had no personal participation in the farming operations of the Comunidad. In fact the debtor testified that the limit of her intervention was to receive her share of the profits. She professed to know only from hearsay that the properties had been operated by the Bank of Nova Scotia from 1933 to the filing of the equity suit.

We think, also, that the debtor was not shown to be a "farmer" by virtue of her poultry business. Assuming that a housewife's raising of a few chickens in the back yard of a city home is the "production of poultry" within the meaning of the definition (cf. In re McMurray, D. C., 8 F.Supp. 449, 454), the debtor will not qualify under this category unless the principal part of her income is derived from this poultry business. Whether the clause "if the principal part of his income is derived from any one or more of such operations" modifies "an individual personally engaged in farming or tilling of the soil" need not now be decided; it certainly modifies the clause immediately preceding it, referring to "an individual personally engaged * * * in the production of poultry * * *." The debtor testified that she received $50 a month from the poultry business. In 1937 she received $20,000 as her share of benefit payments by the Department of Agriculture on account of the 1935 sugar crop of the Comunidad, and she claims that other substantial sums (amounts not indicated) are due her as profits from this "integrated enterprise", as would appear upon an accounting. As previously stated, the profits of the enterprise, since 1933, have been devoted to the payment of debts for which the Comunidad and its members, including appellant, were liable. On this record the debtor failed to establish, indeed made no effort to establish, that the principal part of her income was derived from the production of poultry; hence the District Court was not in error in its ultimate conclusion that "This Court as a bankruptcy court is without jurisdiction to entertain the debtor's petition filed herein."

A petition under Section 75 might have been filed by the Comunidad itself. Paragraph 4 of subsection s expressly extends the application of its provisions "to partnerships, common, entirety, joint, community ownerships, or to farming corporations where at least 75 per centum of the stock is owned by actual farmers, and any such parties may join in one petition." 49 Stat. 945, 11 U.S.C.A. § 203, sub. s (4). But we are dealing here with an individual petition filed by one member of the Comunidad.

The District Court had power to award costs. 28 U.S.C. § 80, 28 U.S.C.A. § 80; Devost v. Twin State Gas & Electric Co., 1918, 1 Cir., 252 F. 125; In re Snowden, 1929, D.C., 36 F.2d 282; The Commercial Guide, 1927, D.C., 23 F.2d 135; Phoenix-Buttes Gold Mining Co. v. Winstead, 1914, D.C., 226 F. 863.

The appellant filed petitions in Nos. 3487 and 3488 for correction of the records. These petitions have been considered by the court and are found to be without merit.

The decree of the District Court is affirmed.

### Upon Petition for Rehearing.

#### PER CURIAM.

Challenging our holding that the new definition of "farmer" in the Chandler Act applies to proceedings under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, appellant cites a general order in bankruptcy relating to petitions under Section 75 filed by personal representatives of deceased farmers. General Order No. 50(9),

effective February 13, 1939, reads in part as follows: " * * * The petition shall show to the satisfaction of the district court that the decedent at the time of his death was a farmer within the meaning of subdivision (r) of section 75 * * *." 305 U.S., App. p. 30, 11 U.S.C.A. following section 53. Form in Bankruptcy No. 63, accompanying the General Orders in Bankruptcy, 11 U.S.C.A. following section 53, provides that a petition under Section 75, 11 U.S.C.A. § 203, shall recite that the petitioner "is primarily bona fide personally engaged in producing products of the soil (*or* that he is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations)".

This provision of General Order No. 50 (9) was carried over without change from old General Order L (9) promulgated April 17, 1933 (288 U.S. 643), 11 U.S.C.A. following section 53. Form 63 was carried over without substantial change from the earlier Form No. 65 (288 U. S. 646), 11 U.S.C.A. following section 53.

The inference is that the Supreme Court in its latest revision of the General Orders in Bankruptcy, relating to proceedings under Section 75, has assumed that the old definition of "farmer" in Section 75, sub. r, 11 U.S.C.A. § 203, sub. r, was not affected by the Chandler Act. Had this matter been called to our attention before, we should have regarded even a tacit interpretation put upon the Chandler Act by the Supreme Court as of great importance, though not as compelling as would be a considered decision of the Supreme Court in a litigated case.

In determining whether we should draw the inference which appellant would have us draw from the general order in bankruptcy above referred to, it is noteworthy that the Supreme Court itself has had occasion to disregard a general order in bankruptcy inadvertently carried over and republished after a significant but unnoticed change of the law. Meek v. Centre County Banking Co., 268 U.S. 426, 45 S.Ct. 560, 69 L.Ed. 1028. In all candor we cannot now say that we believe our previously announced conclusion to be erroneous. That conclusion seemed to us plainly indicated on the face of the statute.

We are far from implying that appellant would qualify as a "farmer" even if the old definition in Section 75, sub. r, is still in effect. If Shyvers v. Security-First National Bank, 108 F.2d 611, decided by the Circuit Court of Appeals for the Ninth Circuit on December 21, 1939, is correct, appellant would seem not to be a "farmer" even under the definition of Section 75, sub. r. We have not gone into this, because we believe that the applicable definition is the new one found in the Chandler Act, 11 U.S.C.A. § 203, sub. r.

The petition for rehearing is denied.